SAMUEL D. MARSH *vs.* AMOS H. PUTNAM & others.

A certificate of discharge under the insolvent laws of this state is a bar to an action on a contract between two citizens of this state, though made and to be performed in another state.

ACTION OF CONTRACT to recover for services performed under the contract hereinafter mentioned. It was agreed that judgment should be entered against all the defendants, except Putnam; and against him also, unless the court, upon the following statement of facts, should decide that he was discharged from this debt.

" The plaintiff Marsh and the defendant Putnam resided in Springfield, Massachusetts, prior to November 8th 1850. On the 8th of November 1850, Marsh went into the State of Georgia. Some time after arriving in Georgia, he was hired and employed by the defendants to superintend and construct certain masonry which the defendants had contracted to do in Georgia, and was to be paid by the defendants for his services monthly. The contract was made in the State of Georgia, and the payments were to be made there.

" Marsh remained in Georgia until March 11th 1852; his

---

wife, during his absence, remained and kept house in Spring-
field; Marsh voted in his ward for city officers at the municipal
election in Springfield in May 1852, and had not voted anywhere
previously, after leaving Springfield in November 1850. Marsh
went to Georgia by arrangement with one Barton, for the pur-
pose of engaging in certain works there for which Barton had
contracted, and not with any intention of removing his family
there.

" Putnam was a resident of Massachusetts when he com-
menced the proceedings in insolvency under which he was dis-
charged. The first publication of notice was on the 18th of
November 1851; and his discharge is dated June 7th 1852 "

*E. W. Bond*, for the plaintiff.

*J. Wells*, for Putnam.

THOMAS, J.    This case is before us upon an agreed statement
of facts.    Before the 8th of November 1850, the plaintiff and
the defendant Putnam resided in Springfield.    On that day the
plaintiff went into the State of Georgia, but for a temporary
purpose ; and retaining, we think it is entirely clear, upon the
facts, his residence and domicil in Massachusetts.    While in
Georgia, the plaintiff was employed by the defendants to su-
perintend certain masonry which they had contracted to do
in that state.    The plaintiff was to be paid for his services
monthly.    The agreement was made in Georgia, and the pay-
ments were to be made there.    How long the defendant Put-
nam remained in Georgia does not appear, nor whether he went
there for a temporary purpose, otherwise than that the facts
find him a resident in Springfield in November 1850, and again
in November 1851, when he filed his petition in insolvency.
The first publication of the notice of the issuing of the war-
rant was on the 18th of November 1851, at which time the
plaintiff was in fact in Georgia, though a resident and citizen
of Massachusetts.    The plaintiff returned to his family and
home on the 11th of March 1852.    Putnam's discharge was
granted on the 7th of June 1852.

The debt which is the subject of the suit was a debt prov-
able against the estate of the insolvent.    It was founded on a

Marsh v. Putnam & others.

contract made after the insolvent law went into operation. It was due to a person resident within the commonwealth at the time of the first publication of notice. It is therefore clearly within the provisions of § 7 of *St*. 1838, *c*. 163. That section pro vides for the discharge of the debtor, first, from all debts actually proved against the estate; secondly, from all debts founded on future contracts made within this commonwealth, or to be performed within the same; thirdly, from all debts founded on future contracts, and due to any persons who shall be resident within the Commonwealth at the time of the first publication of the notice of the issuing of the warrant in insolvency.

This contract was also made with a citizen of Massachusetts; and though the contract was entered into in the State of Georgia, and the payments were to be made there, yet the debt which resulted from that contract followed the parties to Massachusetts, and could be enforced in its tribunals. At the time of the institution of proceedings in insolvency, both parties were citizens and residents of Massachusetts, and within the full jurisdiction of its courts.

The precise objection which is made to the pleading of this discharge in bar is, that the debt of the plaintiff is founded on a contract made and to be performed in another state, and that a state insolvent law cannot affect such contract; that, though the debt of the plaintiff is clearly within the provisions of the statute, yet the statute itself, so far as it assumes to affect contracts made in another state, is not valid under the constitution of the United States.

This court has had frequent occasion to consider the validity and extent of discharges obtained under the insolvent law of 1838, *c*. 163, and the acts additional thereto. These acts are rather bankrupt than insolvent laws, discharging the contract, and not merely the person of the debtor or his present effects. The system has become apparently a permanent one, part of the settled policy of the Commonwealth. In the absence of any legislation by congress upon this subject, it becomes extremely important, especially to a community so deeply engaged in commercial pursuits as our own, to ascertain, as

well as we may, what power the State has in this respect, or rather what are the limitations to its power, imposed by the constitution of the United States. Before the constitution, it is obvious to remark, the power to pass bankrupt laws belonged to the State, as part of its sovereignty. It has been impaired, if at all, by some provision of that constitution; the powers not delegated to congress, nor prohibited by it to the states, being expressly reserved to the states. The power existing in the states to pass bankrupt or insolvent laws would seem to be limited and impaired by two provisions only of that constitution; by the grant of the power to congress to pass uniform laws on the subject of bankruptcies, (art. 1, § 8,) and by the prohibition to the states to pass any law impairing the obligation of contracts, (art. 1, § 10.)

When, after the most mature consideration, it has been settled by the appropriate tribunal, first, that the power given to congress to pass bankrupt laws is not exclusive, and that, when congress does not exercise the power, the states may; and secondly, that the fair and ordinary exercise of that power, by a state law which operates only upon contracts to be made after the law takes effect, does not, within the meaning of the constitution of the United States, impair the obligation of contracts, I have never been able to see any conflict between our insolvent acts, taken in their full force, and any provision of the constitution of the United States. So far, however, as the question has been settled by the decisions of the supreme court of the United States, our judgment is concluded.

It may be well, therefore, to ascertain, as precisely as we may, what has been decided by that court. It is well to bear with us the remark of Mr. Chief Justice Marshall, in the case of *Ogden* v. *Saunders*. "It is a general rule," said that great magistrate, " expressly recognized by the court in *Sturges* v. *Crowninshield*, that the positive authority of a decision is coextensive only with the facts on which it is made." 12 Wheat. 333. And also a remark of the late Mr. Chief Justice Parker, who, speaking of one of Lord Mansfield's comprehensive propositions, said, " It is unsafe to take these general propositions of judges, however eminent, as

rules of decision; for it often happens they are limited in their application, although not in their expression." *Blanchard* v. *Russell*, 13 Mass. 7. These suggestions are especially applicable where eminent judges have reached the same conclusion for very different, not to say opposite reasons, and where we very respectfully bow to the authority of a decision, without being able to give to it the assent of our own judgments. Such examination will show, we think, that the comments upon these decisions by eminent jurists have been too often substituted for the decisions themselves.

The first case is that of *Sturges* v. *Crowninshield*, 4 Wheat. 122. The plaintiff brought an action against the defendant as the maker of two promissory notes, both dated at New York, March 23d 1811. The defendant pleaded a discharge under an insolvent law of New York, passed April 3d 1811, an act not only liberating the person of the debtor, but discharging him from all liability for any debt contracted previous to the discharge. It was held that such discharge was not a good plea in bar. Mr. Justice Johnson, 12 Wheat. 273, says this case "must, in its authority, be limited to the terms of the certificate; and that certificate affirms two propositions; 1st. That a state has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts, within the meaning of the constitution, and provided there be no act of congress in force to establish a uniform system of bankruptcy, conflicting with such law. 2d. That a law of this description, acting upon prior contracts, is a law impairing the obligation of contracts, within the meaning of the constitution."

The case of *M'Millan* v. *M'Neill* was decided at the same term. 4 Wheat. 209. M'Neill, the defendant in error, brought an action in the district court of the United States in Louisiana, (a court having circuit jurisdiction,) for money paid by him as surety upon certain custom-house bonds given by M'Millan, in Charleston (S. C.) in 1812, both parties being then residents in Charleston. M'Millan removed to New Orleans, and in 1815 obtained, under an insolvent law of Louisiana, passed in 1808, a discharge from all debts then due or owing by him. It was

held that this discharge did not bar the defendant.   No written opinion seems to have been given by the court.   Chief Justice Marshall is reported to have said that the case was not distinguishable in principle from that of *Sturges* v. *Crowninshield.* This may be incorrect, as the case is not very carefully reported, the marginal note stating imperfectly the points decided.   In giving the dissenting opinion in *Ogden* v. *Saunders,* 12 Wheat. 333, Chief Justice Marshall says:  " In *M' Neill* v. *M' Millan,* the contract, though subsequent to the passage of the act, was made in a different state, by persons residing in that state, and consequently without any view to the law the benefit of which was claimed by the debtor."   In the same case, ( *Ogden* v. *Saunders,*) Mr. Justice Johnson, in the first opinion pronounced by him, says the principle affirmed in *M' Millan* v. *M' Neill* was " nothing more than this : that insolvent laws have no extraterritorial operation upon the contracts of other states ; that the principle is applicable as well to the discharges given under the laws of the states, as of foreign countries "—a principle it will be well to carry with us when we come to consider the point upon which the case of *Ogden* v. *Saunders* finally turned.

But, taking the case of *M'Millan* v. *M'Neill* in its full breadth, it determines only that a contract made in South Carolina, between parties domiciled there, would not be barred by a discharge subsequently obtained in Louisiana, a state in which the contract was not made or to be performed, and in which the plaintiff and creditor was not a resident when the discharge was obtained.

The case of *Farmers' & Mechanics' Bank of Pennsylvania* v. *Smith,* 6 Wheat. 131, was upon a discharge of a contract under a law passed subsequently to the making of the contract; and the only difference in fact from *Sturges* v. *Crowninshield* was that both parties were citizens of the state where the contract was made and the discharge obtained.

In *Ogden* v. *Saunders,* 12 Wheat. 213, the facts were as follows:  Saunders, a citizen of Kentucky, brought an action of assumpsit against Ogden, then a citizen of Louisiana, declaring upon certain bills of exchange drawn in 1806, by one Jordan, of

Lexington, (Ky.) upon Ogden, then a citizen and resident of
New York, accepted by Ogden in New York, and protested for
non-payment.   Ogden obtained a discharge under the insolvent
act of New York passed in 1801, and subsequently removed to
New Orleans.   To this action, brought in the district court of
Louisiana, he pleaded in bar, among other defences, the dis-
charge obtained in New York.   It was decided by a majority of
the court that such certificate of discharge was not a bar; and
the great, we might say the only, question discussed, and upon
which the strength of counsel and judges was spent, was
whether a state insolvent law, affecting only contracts made
after the passage of the act, was unconstitutional, on the
ground that it impaired the obligation of contracts.   The ma-
jority of the court held that such a law did not impair the obli-
gation of contracts.

Tested by the excellent rule, that the authority of the decision
is coextensive only with the facts, that case decided that a con-
tract, made in one state, not in terms to be performed there, but
payable to the holder wherever he might be, was not discharged
by a certificate obtained in New York, as against a creditor
residing in another state at the time of the inception of the con-
tract, and at the time of the discharge.

Yet there is a difficulty in regard to the case of *Ogden* v.
*Saunders*, viewed simply as authority.   It is this :   The opinion
of the majority of the court, given by Mr. Justice Johnson, is put
on two distinct grounds.   The first is a question of the conflict
of laws.   Expressed in a word, it is that a bankrupt law has
no extraterritorial effect; and that a court sitting in one country
is not to be concluded by a discharge obtained in another,
though that other was the country of the origin of the contract.

It is true that, *proprio vigore*, a bankrupt law has no extraterri-
torial force.   What effect is to be given to it in other countries
is a question of comity.   But the decision of the supreme court
of the United States upon the question, what effect is to be
given to a discharge under a foreign bankrupt law, though enti-
tled, of course, to the highest respect, does not conclude us.
And this court, upon mature consideration, has taken a very

different view of the question of international law and duty from that expressed in *Ogden* v. *Saunders.   May* v. *Breed,* 7 Cush. 15.

It is only upon the second ground, as a question of constitutional law, that we are concluded by the decision, and that to the exact extent to which the facts go.

It is difficult to understand the reasons upon which the ultimate decision in *Ogden* v. *Saunders* rests; still more so, to find in the case a satisfactory rule to be applied to new cases as they arise.   Mr. Justice Johnson, in concluding this opinion, says that the propositions he has sought to maintain are, "1st. That the power given to the United States to pass bankrupt laws is not exclusive; 2d. That the fair and ordinary exercise of that power by the states does not necessarily involve a violation of the obligation of contracts; *multo fortiori* of posterior contracts; 3d. But when, in the exercise of that power, the states pass beyond their own limits and the rights of their own citizens, and act upon the rights of citizens of other states, there arises a conflict of sovereign power, and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and with the constitution of the United States."   12 Wheat. 369.

Without proposing now a thorough examination of the opinion, we may be permitted to remark, 1. That the fair and ordinary exercise of the power to pass bankrupt laws, reserved to, and still existing in the States, would seem to be, to pass bankrupt laws as they were well and familiarly understood at the time the constitution was adopted.

2. That, when the court had determined that a bankrupt or insolvent law had no extraterritorial force or effect, it is difficult to see how it could act injuriously upon the rights of citizens of other states, or produce any conflict of sovereign powers or any collision with the judicial powers granted to the United States. If the whole force and effect to be given to a bankrupt law in another state or country depends upon the comity of that other state or country, it would seem there could be no conflict of sovereign powers.   Or if the federal court, sitting in a state

other than that where the discharge is granted, should or should not give force to such discharge, we cannot perceive that any collision would arise with the judicial powers granted to the United States.

3. To say that because, as between citizens of different states, the constitution had established separate tribunals for the determination of issues of law or fact, a state could not fully exercise its reserved powers, is but to say, that to establish a tribunal to adjudicate upon these rights is to impair or destroy the rights themselves.

A state, having the power to pass a bankrupt law, exercises that power by the passage of a law not conflicting with any law of congress, nor impairing the obligation of contracts. It discharges all future contracts made or to be performed within the state, and all contracts between persons who have voluntarily submitted to the jurisdiction of its courts before the discharge is obtained. Such a law furnishes a rule only to its own tribunals. It seeks to go no further. Its effect in other states and before other tribunals it leaves for them to determine.

Mr. Justice Johnson, in his first opinion in the case of *Ogden* v. *Saunders*, whose principles seem to be in conflict with those of the second, says: " It is not pretended that this discharge could operate upon the rights of the citizen of any other state, unless his contract is entered into in the state that gave it, or unless he had voluntarily submitted himself to the *lex fori* of the state before the discharge; in both which instances he is subjected to its effects by his own voluntary act." 12 Wheat. 281. Again " Whenever an individual enters into a contract, I think his assent is to be inferred to abide by those rules in the administration of justice which belong to the jurisprudence of the country of the contract. And when compelled to pursue his debtor in other states, he is equally bound to acquiesce in the laws of the forum to which he subjects himself." 12 Wheat. 285. These remarks apply with at least equal force to contracts which in terms are to be performed within the state where the discharge is granted, such contracts being made in view of the laws of the place of performance, and, as it were, adopting those laws into the contracts.

We are aware that in the case of *Boyle* v. *Zacharie,* hereafter referred to, Mr. Chief Justice Marshall and Mr. Justice Story say that the ultimate opinion given by Mr. Justice Johnson, in the case of *Ogden* v. *Saunders,* was concurred in and adopted by the three judges who were in the minority upon the general question of the constitutionality of the insolvent law, and that whatever principles are established in that opinion, are the settled rule of the court. But though these statements may lead us to the examination of the views expressed in that opinion with greater deference and respect, and with a greater distrust of our own judgment, when found to differ from them, we do not perceive that they give to that opinion any new force, as an authoritative precedent, binding other tribunals. Nor can one fail to perceive that the distinguished judges, who were of opinion that a state bankrupt law, even as it affected future contracts, was a law impairing their obligation, had the most clear and conclusive reason for concurrence in the judgment, and were not compelled to rely upon the doubtful and difficult course of reasoning which led Mr. Justice Johnson to the same result.

But we proceed with the examination of the cases decided by the supreme court of the United States.

In that of *Shaw* v. *Robbins,* 12 Wheat. 369, *note,* bills were drawn by the plaintiff, then a citizen and resident of Massachusetts, upon the defendant, then a citizen and resident of New York, not payable in terms at New York, in legal effect payable wherever the holder might be. The defendant obtained a discharge in New York, and subsequently moved to Ohio, in the court of which state the action was brought. The court of Ohio held the discharge was a good bar. The supreme court of the United States reversed the judgment, saying only that the decision in *Ogden* v. *Saunders* must govern the case.

In *Clay* v. *Smith,* 3 Pet. 411, it was decided that if a creditor who is a citizen of one state voluntarily makes himself a party to proceedings under the insolvent law of another state, and his debtor obtains a discharge in such proceedings, his debt is released.

In *Boyle* v. *Zacharie* 6 Pet. 635, Boyle, a resident at Balti-

more, consigned a brig to the defendants, merchants at New Orleans. The brig was attached at New Orleans for the debt of Boyle, the defendants became security for the attachment, released the brig, and ultimately paid the judgment recovered against Boyle. Boyle obtained a discharge under the insolvent laws of Maryland. It was held that the implied obligation to indemnify the assignees was a Louisiana contract, and was not discharged under the law of Maryland. The case was decided upon the authority of *Ogden* v. *Saunders*. It was a contract with citizens of another state, made in that other state, and to be performed there.

In *Suydam* v. *Broadnax*, 14 Pet. 67, it was decided that a statute of the State of Alabama, barring all actions at law against the executors and administrators of estates judicially declared insolvent, could not be pleaded as a bar to an action by a citizen of another state in the circuit court of the United States. It is to be observed that the statute of Alabama expressly excepted debts contracted out of the State.

In the last case which has come under the consideration of the supreme court of the United States, *Cook* v. *Moffat*, 5 How 295, the action was brought upon notes drawn and dated at Baltimore, but delivered in New York, in payment for goods purchased there. It was held that the notes were payable in and to be governed by the laws of New York, and that a discharge of the defendant, under the provisions of the insolvent law of Maryland, was not a bar to the action. This case seems to have been decided upon the authority of *M'Millan* v. *M'Neill* and *Boyle* v. *Zacharie*.

This case does not enable us the better to understand the principles upon which the leading case of *Ogden* v. *Saunders* was decided. The majority of the court " do not deem it necessary to vindicate the consistency of the propositions ruled in that case, with the reasons on which it appears to have been founded." 5 How. 309. We cannot help expressing our regret that such vindication was thought unnecessary. As the case of *Ogden* v. *Saunders* has been supposed to impose important restrictions upon the rights and powers of the states; as it was

decided by a bare majority; as it apparently rests on two distinct grounds—one of international, the other of constitutional law—the first of which would not be conclusive upon the state courts, and the other of which would; as the reasons of the decision, and its operation and effect, have been very differently understood by the courts and by the profession; it seemed extremely desirable that the reasons for the rule it established should be reëxamined, and its just limitations and boundaries defined. As it is, with the different and conflicting views expressed by five of the learned judges of the court, the whole subject is left in greater uncertainty, if possible, than before.

The opinion of the majority of the court, we must say with great respect and deference, repeats the error in the reasoning of Mr. Justice Johnson, in his second opinion in *Ogden* v. *Saunders*, and while it holds that state bankrupt laws can have no effect in any forum beyond their own limits, unless by comity, it assumes that in point of fact they have such effect, and for that reason and to that extent are unconstitutional. " It is true," say the learned court, " that, as between the several states of this union, their respective bankrupt laws, like those of foreign states, can have no effect in any forum beyond their respective limits, unless by comity. But it is not a necessary consequence, that state courts can treat this subject as if the states were wholly foreign to each other, and inflict her bankrupt laws on contracts and persons not within her limits." 5 How. 308. It is not easy to see how the states, if they were wholly foreign to each other, could inflict on contracts and persons not within their limits, laws which can have no effect beyond those limits, except by comity. But they may pass laws having effect within those limits, and binding at least their own courts, leaving the effect in other states and countries to be determined by their own tribunals. " It is," say the court, " because the states are not foreign to each other, and because of the restraint on their powers of legislation on the subject of contracts, and the conflict of rights arising from the peculiar relations which our citizens bear to each other, as members of a common government, and yet citizens of independent states, that doctrines have been established, on this subject, apparently incon-

sistent and anomalous." 5 How. 308.   We do not appreciate this difficulty.   The power to pass bankrupt laws existed originally in the states; it is limited only by the provisions of the constitution; those limitations are that they shall not impair contracts, or conflict with an existing law of congress.   Subject to these limitations, the states, on this subject, are foreign to or independent of each other; and it is, we submit, by assuming that they are not so independent, but that their rights and powers have been limited and impaired not by any express power given to congress, nor any prohibition to the states, but by the mere creation of separate tribunals to determine questions arising between the different states and their citizens, that this inconsistency and anomaly, real as well as apparent, have wholly arisen.

But without entering at large into so wide a field of discussion, we content ourselves, as in *Brigham* v. *Henderson*, 1 Cush. 434, with referring to and expressing our concurrence in the views stated, in this case of *Cook* v. *Moffat*, by the eminent magistrate who presides over the supreme court of the United States.   5 How. 310.

In this state of the opinions of that tribunal to which, on these subjects, we look for guidance, we know of no safe rule but *stare decisis*, and yet not go beyond the precise limits of the decisions.

That court has decided that the power of Congress to pass a bankrupt law is not exclusive ; that the exercise of that power by the states, as to future contracts, does not impair their obligation ; that a contract made and to be performed in one state is not, as against a citizen of that state, discharged by a certificate obtained under the laws of another state, though such laws were passed before the inception of the contract ; that a discharge under the laws of the state where the contract was made, but not to be performed, could not be pleaded in bar, in the circuit court of the United States, against a creditor, a citizen of another state at the time of the origin of the contract and of the discharge ; that the same is true when the action is brought in the courts of a state other than that of the origin of the contract ; that a creditor of one state, who voluntarily makes himself a

party to insolvent proceedings in another state, is bound by the result.

That court has not decided that a contract which is in terms to be performed within the state where the discharge is granted, may not be barred by such discharge, as against a citizen of another state, seeking to enforce the contract in the state where the contract was to be performed, and where the discharge was obtained.

Nor has it decided the question raised in the case at bar, where the contract was made with a citizen of the state where the discharge is granted, and of which both creditor and debtor were citizens at the time of the proceedings in insolvency, though the contract itself was entered into in another state. On the other hand, a careful examination of the cases leads to the conclusion that this is not within any of the reasons upon which they seem to have been determined.

We do not forget that the result of these decisions has been more broadly stated by eminent jurists. Mr. Justice Story, in his Commentaries upon the Constitution, § 1390, stating this result, and to what contracts state insolvent or bankrupt laws may lawfully apply, says, " that they do not apply to contracts made within the state, between a citizen of the state and a citizen of another state," and " that they do not apply to contracts not made within the state." In *Springer* v. *Foster*, 2 Story R. 387, the same judge says : " The settled doctrine of the supreme court of the United States is, that no state insolvent laws can discharge the obligation of any contract made in the state, except such contracts as are made between citizens of that state." Chancellor Kent, in 2 Kent Com. (6th ed.) 393, says : " The doctrine of the supreme court of the United States, in *Ogden* v. *Saunders*, is, that a discharge under the bankrupt law of one country does not affect contracts made or to be executed in another." If he refers to the doctrine of the court upon the question as one of international law, such is the result. If, however, he means that such is the doctrine of constitutional law, in relation to the discharge under state insolvent laws, we can only say, with regard to this statement, as with regard to the

statements of Mr. Justice Story, that, though we have the
highest respect for the opinions of those eminent jurists, yet,
in the reported decisions of that court, we can find no case
that goes to that length. We can find no case in which it
has been held that a contract, though made in another state,
may not be discharged by a state insolvent law, where both
creditor and debtor are citizens of the state granting the dis-
charge, and subject to the jurisdiction of its courts. It is quite
plain that Mr. Justice Story, in his Commentaries, had not a
case like this in his mind, from the reason given by him for such
conclusion, which is, " that the state does not possess a jurisdic-
tion coextensive with the contract, over the parties."

Nor will it be found, upon a careful examination of the decis-
ions of our own court, that any decision has gone beyond the
line of the cases decided in the supreme court of the United
States.

The first case that arose in this court after the case of *Ogden*
v. *Saunders,* that of *Braynard* v. *Marshall,* 8 Pick. 194, was of a
negotiable note made at New York, but indorsed for a valuable
consideration to a citizen of Massachusetts, before the discharge
of the debtor in New York. Such a note is payable anywhere ;
it is a promise to pay whosoever shall be the holder. This case
was within the rule of *Ogden* v. *Saunders* and *Shaw* v. *Robbins.*
Mr. Chief Justice Parker, in giving the opinion of the court,
states rather what he deems the effect of the reasoning in *Ogden*
v. *Saunders,* than the precise point decided.

In *Betts* v. *Bagley,* 12 Pick. 572, a discharge obtained in New
York was held good in this state, the contract having been made
in New York, and to be performed there, both parties being citi-
zens of that state.

*Agnew* v. *Platt,* 15 Pick. 417, stands, if at all, on the decisions
in *Ogden* v. *Saunders* and *Shaw* v. *Robbins,* but is in conflict
with *Clay* v. *Smith,* 4 Pet. 411, and cannot be regarded as law.

*Savoye* v. *Marsh,* 10 Met. 594, was like *Brainard* v. *Marshall.*
It was upon a note, negotiable and payable to a firm in New
York, not a contract to be performed within this commonwealth,
nor a case where the parties were citizens of this state at the

time of the contract, or of the institution of proceedings in in solvency. There is an intimation by the learned judge who delivered the opinion of the court, that the decided cases seemed to go further, and to hold the doctrine that insolvent laws can only operate upon those who are citizens of the state where the law is passed. Such, we think, upon a careful examination, is not the result.

*Fiske* v. *Foster*, 10 Met. 597, and *Woodbridge* v. *Allen*, 12 Met. 470, are identical in principle with *Savoye* v. *Marsh.*

In the case of *Brigham* v. *Henderson*, 1 Cush. 430, both parties were resident in this state when the contract was made It was made and to be performed in this commonwealth. After the making of the contract, but in pursuance of an intention formed before it was made, and prior to the institution of proceedings in insolvency, the plaintiff removed to another state. It was held that the discharge was a bar to an action brought on the contract in the courts of this state.

*Ilsley* v. *Merriam*, 7 Cush. 242, was an action for the price of goods sold to the defendant by the plaintiff through an agent, the plaintiff being at the time and ever after a citizen of Maine. The payment was not, in terms or by effect of law, to be made in this state. The rule, as settled in *Savoye* v. *Marsh*, is too broadly stated ; the case itself is clearly within the rule.

*Clark* v. *Hatch*, 7 Cush. 455, was an action upon a note payable to the treasurer of the State of Connecticut, or his successor—a contract, in legal effect, to be performed in that state. It was held that a discharge obtained here did not bar it.

*Scribner* v. *Fisher*, 2 Gray, 43, was an action upon a contract which, by its terms, was to be performed in this commonwealth, though made in New York. A discharge obtained under our insolvent laws was held a good bar.

The case before us, then, is a new one. It is within the direct provision of the statute. It arises in the courts of the state where the discharge was obtained; between parties each of whom was a citizen and resident of the state at the time of the discharge ; and the plaintiff, if not both parties, at the time the contract was made. A question between its own citizens, it can

lead to no conflict of the state with other states or their citizens, or with the judicial powers of the United States.

To the suggestion that the validity of the discharge must be governed by the law of the origin of the contract, the answer is obvious.   It is, that there is no apparent conflict; and if there were, that the effect to be given to the *lex loci contractus* is matter of comity, and must yield to the express provisions of positive law.   When the *lex loci* and the *lex fori* come into collision, the comity of states must yield to the positive law of the land. Story Confl. §§ 326, 327.   2 Kent Com. 461.   *Potter* v. *Brown*, 5 East, 131.                                     *Judgment for Putnam.*