GILBERT TAPLEY & another *vs.* WILLIAM W. FORBES.

In an action by the assignees of an insolvent debtor to recover the value of goods sold by him in violation of the provisions of *St.* 1856, c. 284, § 27, it is not necessary to set forth in detail, in the declaration, the facts on which the plaintiffs rely to support it.

No offer to return the consideration received by an insolvent debtor for goods sold by him in violation of the provisions of *St.* 1856, c. 284, § 27 is necessary, in order to enable his assignees to sustain an action against the purchaser to recover the value of the goods.

In such action, declarations by the insolvent tending to show a fraudulent intent on his part, made after the sale, and after proceedings in insolvency have been instituted against him, and not in the presence of the defendant, are incompetent; but if, after the admission of such declarations in evidence, the judge states, in the presence of the jury, that they were incompetent and ought not to be considered by them, and if, at a subsequent stage of the trial, the fact which the declarations tend to establish is conceded, there is no reason for setting aside a verdict for the plaintiffs.

Tapley & another *v.* Forbes.

If, in such action, an attorney at law, called by the defendant, has testified in chief that he introduced the insolvent to the defendant, by a letter of introduction, in which he highly recommended his credit and character, and that he had acted as counsel for the insolvent for some time, and did not suspect his insolvency, it may be shown by way of cross-examination that he has presented to the assignees a bill against the insolvent for professional advice in business matters at various times shortly before his failure, and before the date of his letter of introduction, and the bill itself may be introduced in evidence, as a part of the cross-examination.

If, in such action, the judge instructs the jury that, if the sale was made out of the usual and ordinary course of business of the debtor, this fact would be *prima facie*, and, if uncontrolled, sufficient evidence that the defendant had reasonable cause to believe the debtor insolvent, or in contemplation of insolvency, the defendant has no ground of exception, although the judge refuses to instruct them that the plaintiffs must prove that he knew that the sale was made out of the usual or ordinary course of the debtor's business.

Tort by the assignees of Asa Swett, an insolvent debtor, to recover the value of goods purchased of him by the defendant, between the 5th and 10th of November 1858, in violation of the provisions of *St.* 1856, *c.* 284, § 27.

At the trial in the superior court, before *Brigham,* J., the plaintiffs introduced evidence to show that, on the 4th of November, Swett, who was a retail carpet-dealer on Hanover Street, in Boston, with a stock in trade worth about $14,000, applied to B. J. Gerrish, an attorney at law, for a loan of money, and Gerrish informed him that he had no money of his own to lend, but would give him a letter of introduction to the defendant, who had money to lend; and accordingly he gave him a letter, highly recommending his credit and character, and Swett presented the same to the defendant, who kept a retail grocery store on Cambridge Street, in Boston, with a business of about $25,000 a year, and borrowed of him $300, giving his note for the same, and a bill of carpeting for about $500 as security, the carpets being delivered to the defendant at his store. A few days afterwards, Swett applied to the defendant for a few hundred dollars more, offering security as before; and a written contract was completed between them, in pursuance of which the defendant received carpeting to the value of $2100, including that already delivered, and furnished to Swett $1000 in money, including the sum already advanced, and conveyed to him an equity of redemption of a house in Chelsea, variously estimated

at from $100 to $800 in value. There was also some evidence of the extent of the defendant's acquaintance with Swett's usual manner of doing business. Swett failed in business, and left the Commonwealth, on or about the 19th of November, and proceedings in insolvency were immediately commenced against him.

The plaintiffs introduced evidence, under objection, of certain declarations by Swett, not in the presence of the defendant, some two months after the sale, and tending to show a fraudulent intent on his part; and offered further evidence to the same effect, which was excluded by the court, upon the ground that, upon reconsideration, the evidence then offered, and that of the same character which had been already admitted, were both incompetent, and ought not to be considered by the jury, and this was said when the jury were present, but they were not so instructed. At a subsequent stage of the trial, the defendant admitted that the sale was made with fraudulent intent by Swett, but denied that he knew or had reasonable cause to believe the same.

Gerrish was called as a witness by the defendant, and testified in chief to introducing the parties, as before stated, and that he had for some time acted as counsel for Swett, and had been in the habit of lending money for the defendant, and that he did not know or suspect, and had never heard, that Swett was insolvent, or contemplated insolvency, or that there was any doubt as to the payment of his bills. In cross-examination, he testified, under objection, that the plaintiffs had demanded payment of a small charge against him for goods appearing on the insolvent's books, and that he gave to them, as a set-off, a bill against a partnership of which Swett was formerly a member, for professional services as an attorney, amounting to $68, which was mostly for advice as to business matters, in September and October 1858.

There was no evidence of any demand by the plaintiffs upon the defendant for the goods sued for, or of any offer by them to restore the money or reconvey the equity of redemption which Swett received from him, and the defendant objected that, for

this reason, t] e action could not be maintained; but the objection was ove.ruled. The defendant also objected that, even if the grounds taken by the plaintiffs were valid, the declaration, which contained the ordinary counts in trover, was insufficient; but this objection was overruled.

The judge instructed the jury, amongst other things, that it was incumbent on the plaintiffs to prove that Swett was actually insolvent, or in contemplation of insolvency, at the time of the sale, and that the defendant had reasonable cause to believe the same, and that the sale was made for the purpose of removing the property, or its proceeds, out of the operation of the insolvent laws of the Commonwealth; and, if the sale was made out of the usual and ordinary course of Swett's business, that fact would be *prima facie*, and, if uncontrolled, sufficient evidence that the defendant had such reasonable cause of belief. After these instructions had been given, the defendant requested the judge to instruct the jury that it was necessary for the plaintiffs to prove that he knew that the sale was made out of the usual and ordinary course of the insolvent's business; but the judge declined so to rule.

The verdict was for the plaintiffs, and the defendant alleged exceptions.

*A. A. Ranney & A. S. Austin,* for the defendant.

*J. G. Abbott & B. Dean,* for the plaintiffs.

BIGELOW, C. J. This action is brought by the plaintiffs, as assignees of an insolvent debtor, to recover the value of certain property alleged to have been sold by him to the defendant, contrary to the provisions of *St.* 1856, *c.* 284, § 27, (Gen. Sts. *c.* 118, § 91.) By that section, it is enacted that any sale, assignment, transfer or conveyance made by an insolvent debtor in violation of its provisions shall be void, and.the assignees may recove the property so sold, assigned, transferred or conveyed, or th value thereof, as assets of the insolvent estate.

1. The first objection urged by the defendant to the maintenance of the present action is, that the declaration is insufficient, and does not support the case as proved at the trial, because it contains no specific allegations of the facts on which the

plaintiffs rely to sustain their right to recover under the statute. This objection, though specious, is not sound. The statute, while it declares the right of assignees to recover in clear and explicit terms, prescribes no particular form of remedy. It therefore presents a case for the application of the well settled and familiar principle, that, if a right is conferred by statute without affording a specific mode for its enforcement, a party may resort to any common law action, which will furnish him an adequate and appropriate means of redress. *Knowlton* v. *Ackley,* 8 Cush. 97. By the operation of the statute, the title of the defendant to the property acquired by the sale from the insolvent debtor to him was defeated, as against the assignees. He took only a present, temporary and defeasible title, subject to be devested by proceedings in insolvency; and when such proceedings were had, they took effect by relation back to the time when the sale and transfer were made to the defendant, and rendered his claim to the property void *ab initio.* In other words, the insolvent debtor had no power by a fraudulent sale to defeat the equitable title which his creditors had to the proper appropriation of his property to the payment of their debts. The defendant took subject to this equity, which ripened into a legal title in the assignees, in its nature prior to and paramount to that acquired by him. Any act of his which amounted to an application of the property to his own use and beneficial enjoyment, in exclusion of the right of the assignees, and under a claim inconsistent with their title, was a conversion. We think, therefore, an action of tort in the nature of trover, which is in substance a remedy to recover the value of personal chattels wrongfully converted by another to his own use, might well be maintained against the defendant on the facts proved at the trial. *Stevens* v. *Austin,* 1 Met. 557.

2. Nor can the objection avail the defendant, that the plaintiffs did not offer to return the money paid by him to the insolvent debtor for the property in controversy, or to reconvey the right in equity to redeem certain real estate which formed a part of the consideration for the transfer. It is a sufficient answer to this objection, that there was no evidence at the trial that

either the money or the real estate had come to the hands of the plaintiffs, or been vested in them. For aught that appeared, the insolvent debtor had appropriated the entire consideration received by him from the defendant to his own use and benefit, before the proceedings in insolvency were commenced. Certainly the plaintiffs could not be called on to restore that which they had never received. But, if it were otherwise, we do not think the right of the plaintiffs to maintain the action could be made to depend on the condition precedent, that there should be a restitution or offer to return the consideration of the alleged fraudulent sale. The rights of the creditors to the assets of their debtor are superior and paramount to any such claim by the vendee. The sale to him is declared void by statute, and the right to recover the property is absolute and unconditional, if those facts are proved which in law make the sale fraudulent. It is not like a case of a sale of goods obtained by fraud practised by the vendee on the vendor, in which the latter disaffirms the contract and seeks to recover back the property. In such case, the rights of third parties do not intervene, and are not affected by the dealings between the original parties. But where property is transferred by an insolvent debtor in fraud of the rights of his creditors, the statute aims to protect their interests, and gives to the assignees, as their representatives, an immediate and absolute right to recover the property or its value from the fraudulent vendee. The claim of the plaintiffs in the case at bar is much more analogous to that of a creditor where a transfer of property, fraudulent and void at common law under the statutes of Elizabeth, has been made by a debtor. The right of the creditor, in such a case, to recover the property is absolute on proof of the fraud. No restitution, or offer to return the consideration of the fraudulent conveyance, is necessary to the maintenance of such an action. We do not mean to say that assignees have no power to affirm a sale which was fraudulent and void as to creditors. If the consideration was executory, and they elected to enforce it, it might well be held that they were estopped from afterwards seeking to invalidate a contract which they had by their own act recognized, and the fruits of

which they had sought to recover. *Snow* v. *Lang*, *ante*, **18**. But no such considerations are applicable to the case at bar. The plaintiffs have done no act which tends to show any acknowledgment of the validity of the sale to the defendant. On the contrary, they have disaffirmed it by bringing this action to recover the value of the property. The broad doctrine for which the defendant contends would defeat the wise and salutary objects which the statute was intended to accomplish. It would prevent the recovery of property fraudulently transferred by an insolvent debtor in all cases where the assignees had not assets with which to make or tender restitution to the fraudulent vendee. We should be very slow to adopt a construction of the statute which would lead to such a conclusion.

3. The objections taken to the admission of evidence at the trial are not well founded. The declarations of the insolvent, made subsequent to the sale to the defendant, were clearly incompetent; but the error of admitting them was afterwards cured by the explicit statement, in the hearing of the jury, that they were to be disregarded by them. If the defendant wished for a more distinct instruction on this point, it was his duty to have asked it. Besides ; the fact which these statements tended to prove, that the vendor in making the sale had a fraudulent intent, was admitted at a subsequent stage of the trial. So the evidence, if erroneously admitted, was immaterial. The questions put to the witness Gerrish, on cross-examination, were such as might well be allowed by the court in the exercise of a sound discretion.

4. The instructions given to the jury were sufficiently full and accurate, and were adapted to the facts in proof. They in substance required the jury to find that the defendant knew that the sale to him was not made in the usual and ordinary course of the business carried on by the insolvent. This, if established, was by express provisions of the statute *prima facie* evidence that the defendant participated in the fraudulent act.

*Exceptions overruled.*