# JOHN W. CRAMPTON, ASSIGNEE, *v.* VALIDO MARBLE COMPANY.

*Insolvent Law. Fraud. Demand. Assignee. Damages. Practice.*

1. The insolvent law may act upon contracts made in another state by citizens of this State, when all the parties interested are within the jurisdiction of our court; an assignment vests in the assignee all the property, whether in this or another state; and he can recover of a creditor for property situated in another state which he purchased there of the debtor in fraud of the law in payment of his debt.

2. In an action of trover by an assignee against a creditor who purchased the debtor's property in fraud of law, and applied it in payment of his debt, evidence of the price was admissible on the question of damages—not conclusive, but to be considered in connection with the fact that the sale was peculiar, and as tending in some measure to show the value.

3. No demand was necessary.

4. The measure of damages was the value of the property at the time the defendant took it.

5. The court allowed the plaintiff to file a *remittitur*, certain articles having been by inadvertence included in the verdict, which were not taken by the defendant, and rendered judgment for the balance.

TRESPASS on the case and trover. Trial by jury, March Term, 1887, TAFT, J., presiding. Verdict for the plaintiff to recover $1,548.11, made up as follows: Pair of oxen, $162.76; one dynamo, $696.47; marble purchased at West Rutland, Vt., $260.28; marble purchased at Salem, N. Y., $428.60.

The evidence for the plaintiff tended to show that the West Rutland Marble Company was a Vermont corporation operating a marble quarry in West Rutland, in the State of Vermont, and two marble mills, one at West Rutland and the

other at Salem, in the State of New York; that Dr. Nelson was the president of said company, and resided at Rutland, in this State, and that the establishment at West Rutland was in charge of one Barnum, and the establishment at Salem was in charge of one Thomas; that the Valido Marble Company was a corporation under the laws of the State of Vermont, carrying on a marble mill and business in the town of Fair Haven, in this State; that in the month of January, 1886, the West Rutland Marble Company owed the defendant the sum of about $1,630, and was insolvent; that on the 6th day of January, 1886, Guy H. Reynolds, treasurer of the defendant company, saw the said Nelson, and afterwards, on the same day, went to West Rutland and represented to Barnum that he had purchased of Nelson, as such president, one dynamo, an electrical machine, then in use at the establishment at West Rutland, for the sum of $1,100, to be applied in reduction of defendant's said claim against the West Rutland Marble Company, and that Barnum, knowing the company to be desirous of selling said dynamo at that price, delivered the same to said Reynolds, who took it away; that at the same time said Reynolds purchased of Barnum, as agent of said company, one yoke of oxen at the price of four and one half cents per pound, live weight, and five car loads of marble, all to be applied upon the same indebtedness; that said oxen and two car loads of the marble were delivered, but that the delivery of the rest of the marble was prevented by the legal proceedings hereafter mentioned; that it was agreed that the price of said marble should be according to grade, and at the list, or usual market prices for the different grades, less the customary wholesale discount which was allowed the defendant, as a wholesale dealer; and that the price of the marble contained in the two car loads, so taken by said defendant, as then graded, and after taking out the discount, was $280.37; that on the next day said Reynolds went to Salem and purchased of said Thomas, as agent of the West Rutland Marble Company, three car loads of the marble which had been sawed out at the Salem

mill, and which, at the time, was in the yard connected therewith, and which he selected, and which was graded by Thomas, and loaded by the men employed at said mill, who were paid therefor by the defendant; that said Reynolds directed said marble to be shipped to said Fair Haven, where the said West Rutland marble had also been shipped, and paid the freight thereon; that the price of the marble was fixed in the same manner as that of the West Rutland marble, and amounted to $512.06.

The plaintiff also offered evidence tending to show that said dynamo was taken by cars to Fair Haven, where it lay for some days in the freight depot, whence it was taken into the State of New York, where it remained for several months, and until after the commencement of this suit; that the said oxen, at some time in the month of January, 1886, were sold and killed; that said marble, or a part of it, and whether that from West Rutland or Salem did not appear, was taken into the State of New York without having been unloaded, but was returned to Fair Haven, where said five car loads were unloaded and placed among other marble in said defendant's yard, and that sales were made therefrom to the amount of about $75, and that the rest was still on hand; that the understanding between the defendant and the West Rutland Marble Company was that all said purchases were to be applied to the liquidation of defendant's claim against the West Rutland Marble Company, or so much thereof as would be necessary for the payment of the same.

For the purpose of showing the value of said property the plaintiff offered evidence to show the price which the West Rutland Marble Company sold the property for to the defendant, and the same was admitted not as conclusive, but to be considered with the other evidence in the case, and in connection with the fact that it was taken upon a demand against the vendors of the property. This was admitted against the objection of the defendant, and exception was seasonably taken. The counsel for the plaintiff did not claim that the sums

agreed to be paid for the property were, as matter of law, conclusive as to the values, but urged in argument that as defendant had agreed to allow those prices at the time of the sale, they ought, in fact, to be taken at the trial as the true values for which defendant should be held liable.

The plaintiff's evidence further tended to show that on the 6th day of January, 1886, a petition in insolvency against said West Rutland Marble Company was filed in the Court of Insolvency for the District of Rutland; that such proceedings were had that said company was duly adjudged an insolvent January, 1886; that plaintiff was duly appointed assignee February, 1886, and on February, 1886, all property of said insolvent debtor was duly assigned to plaintiff as such assignee, all pursuant to said Vermont insolvency statutes.

The defendant conceded that on the 6th and 7th days of January, 1886, the West Rutland Marble Company was insolvent, and that the defendant's officers had reasonable cause to believe said company to be insolvent, and made no question but the sales to defendant, so far as they took place in Vermont, were preferences in fraud of the insolvency laws of the State of Vermont, within the meaning of sections 1860 and 1861 of the Revised Laws of Vermont, nor that the said transaction at Salem was of the same character with the sales at West Rutland, except that being out of the State, defendant claimed that the same could not be affected by the said laws of Vermont.

Defendant claimed that plaintiff had not shown any such demand by him and refusal by defendant to return said property, as would enable him to maintain this action.

*Lawrence & Meldon*, for the plaintiff.

No demand was necessary. *Larkin* v. *Hapgood*, 56 Vt. 597; 2 Allen, 24. The defendant was a wrong-doer. The assignee could recover the property or its value. The evidence of the agreed price was admissible. As to the Salem marble, resident citizens of this State cannot, by merely step-

ping across its boundary line, make contracts and transfer property in fraud of the laws of this State, and of creditors of one or the other of the parties, and then return with the property and hold it in defiance of the laws. 3 Gray, 551; 7 U. S. Dig. 578; *Gardner* v. *Lewis*, 7 Gill (Md.) 377; 4 Johns. Ch. 485; *Merrick's Estate*, 5 Watts & Serg. 9; *Smith* v. *Brown*, 43 N. H. 44; 21 N. H. 106; 14 N. H. 38.

Personal property has no *situs*, but follows that of the owner, and the assignment would have vested the property in the assignee had it not thus been fraudulently turned out to the defendant. Cases, *supra*.

*C. H. Joyce* and *H. A. Harman*, for the defendant.

A state insolvent law cannot affect a sale of chattels, situated, contracted for, and delivered in another state where there is no such law. The title to this marble completely vested in the defendant. *Burrows* v. *Whittaker*, 71 N. Y. 291. No assignment of the owner's property had been made.

The right of a debtor, however insolvent, to apply his property in payment of his debts in his own order, is perfectly well settled. *Spring* v. *So. Car. Ins. Co.* 8 Wheat. 268; *Dudley* v. *Danforth*, 61 N. Y. 626; *Lyon* v. *Rood*, 12 Vt. 33.

The Constitution of the United States provides that no state shall pass any law impairing the obligation of contracts. Early in our national judicial history certain principles were laid down as to the relation of insolvency laws to that prohibition. States may pass insolvency laws, when Congress has not put a bankrupt law in force, provided that such laws do not impair the obligation of contracts. *Sturges* v. *Crowningshield*, 4 Wheat. 122; *Ogden* v. *Saunders*, 12 Wheat. 213; *McMillan* v. *McNeill*, 4 Wheat. 209; *Fletcher* v. *Peck*, 6 Cranch, 87.

The assignment would not be respected in the courts of New York. *Kelly* v. *Crapo*, 45 N. Y, 86.

This court has often recognized the right of our citizens to go into other states, and there to make contracts of sale which

could not have been enforced if made here; yet which were adjured to be valid as to our laws, because valid under the laws of the place where made. Thus, to make sales of intoxicating liquor: *Gaylord* v. *Soragen*, 32 Vt. 110; *Aiken* v. *Blaisdell*, 41 Vt. 655; sales on Sunday: *Adams* v. *Gay*, 19 Vt. 358; chattel mortgage: 57 Vt. 360.

Contracts of marriage between citizens of a state by whose laws they are absolutely forbidden, are held valid by the court of the same state, when lawfully celebrated elsewhere, and although the parties went there merely to evade the law. *Van Voorhis* v. *Brintnall*, 86 N. Y. 18; *Thorp* v. *Thorp*, 90 N. Y. 602; *Morse* v. *Hegemen*, 91 N. Y. 521.

Against this law, can only be urged the principle that the State may compel its own citizens to refrain from doing beyond its limits some things which the local law would avoid, if done within its limits. *Still* v. *Worsewick*, 1 H. Bl. 665; *Hunter* v. *Potts*, 4 T. R. 182; *Dehon* v. *Foster*, 7 Allen, 57. But this doctrine meets with these vital limitations: (1.) It could not affect this case to concede that our courts may enjoin our citizens from prosecuting actions, valid by the laws of the states where pending, for putting in motion the legal process of another state does not create a *contract* protected by the National Constitution; (2.) English precedents are not in point; for no constitution protects contracts against the action of Parliament; (3.) The right of the bankrupt's chose in action is not concerned. Here personal chattels, beyond the jurisdiction of the court, were sold by an executed and lawful contract. 4 Johns. Ch. 460; 14 N. H. 38; 21 N. H. 106; 43 N. H. 44. The price at which the defendant agreed to take the property, under the circumstances, was not competent evidence of the money value of the articles.

The position that a particular sale to become evidence of value, should be fair, actual, and without unnatural advantages on either side, finds support in authority. *Campbell* v. *Woodbridge*, 20 N. Y. 499; *Gill* v. *McNamee*, 42 N. Y. 44; *Knickerbocker L. J. Co.* v. *Nelson*, 78 N. Y. 137.

Evidence of value, too remote to be admissible, is not a thing to be considered by the jury in their discretion, but it is incompetent, and if received will vitiate the verdict. *Noyes* v. *Fitzgerald*, 55 Vt. 49.

A demand of the chattels was a condition precedent.

The sale is valid to all the world except the assignee. It is not, therefore, void, but voidable. *Snow* v. *Long*, 2 Allen, 18.

A preference under sections 1860-61, is not *malum in se*. The purchaser does not become, by relation back, a trespasser for having taken the goods. *Bailey* v. *Bunning*, 1 Levinz, 172; *Lechmere* v. *Thoroughgood*, 1 Shower, 12; *Cooper* v. *Chitty*, 1 Burr. 20; *Smith* v. *Miles*, 1 Term, 480; *Schuman* v. *Fleckenstein*, 15 N. B. Reg. 224; *Nixon* v. *Jenkins*, 2 H. Bl. 135.

The opinion of the court was delivered by

VEAZEY, J. One important question in this case is whether the assignee in insolvency became invested under the assignment with the same right to recover the value of the marble that was in Salem, New York, as though that marble had been in Vermont when the defendant took it. It is insisted by the defendant's counsel that the contract as to that marble between the two marble companies, being valid in New York where it was made, the insolvency law of this State cannot "reach to the impairing or avoiding of that contract." Section 1820, R. L., provides: "An assignment under order of a court of insolvency shall vest in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned or conveyed, * * *. And the assignment shall by operation of law relate back to the date of the filing of the petition." * * * Section 1860, R. L., pronounces a transfer like the one in question "void" and gives to the assignee the right to "recover the property or the value thereof from the person so receiving, or so to be benefitted thereby."

The contention in this case raises the old question whether an assignment in bankruptcy operates as a complete and valid transfer of all the bankrupt's movable property in other jurisdictions as well as at home; and thus give the assignee the same rights against purchasers and attaching creditors, in the one case as the other.

This question and the question as to the effect of a discharge upon non-resident or foreign creditors who have not submitted to the jurisdiction of the bankruptcy court, have received the most careful consideration of English and American courts and of the ablest legal authors of both countries.

The opinions in some American cases contain a review and discussion of all the authorities; as in *Ogden* v. *Saunders*, 12 Wheat, 213; *Cook* v. *Moffat*, 5 How. 295; *Marsh* v. *Putnam*, 69 Mass. (3 Gray) 551.

The courts of England maintain the doctrine of the universal operation of an assignment upon all movable property, wherever situated at the time of the assignment. The courts of this country are divided on the question, but the weight of American authority is considered to be in favor of confining the operation of such assignment to the state where the party is declared bankrupt or insolvent. The discussion of this vexed question has been so exhaustive, it would be but repetition to again review the cases, or to present the course of reasoning that has led the most eminent jurists to opposite results.

On examination of the cases of the United States Supreme Court, where naturally questions growing out of bankruptcy and insolvency laws would receive the most searching investigation, it will be found that the case at bar, so far as the decisions of that court are concerned, is a new one. The parties in this case are both residents of this State. The debtor company owned a marble quarry and mill in this State and another mill in Salem, New York, where some of its marble was sawed. On the day the petition in insolvency was filed, the treasurer of the creditor company, this defendant, took a transfer of certain marble and other property at the

debtor's mill in this State, to apply on its debt, then having reasonable cause to believe the debtor was insolvent; and the next day he went to Salem and for a like purpose took a like transfer of some of the marble there, and brought it back to his company's premises in this State.

The defendant stands solely on the fact that the contract for the Salem marble was made in New York. No court of that state has intervened. No special law of that state is invoked. No non-resident complains. The controversy is not between residents of different states, nor as to a debt created prior to the enactment of the insolvency law, nor as to the effect of the action of a court in another jurisdiction, touching the same matter. The difference between this case and those in the Federal and Massachusetts reports, is well pointed out in *Marsh* v. *Putman*, 69 Mass. (3 Gray), 551.

In many of the cases the contention has been between residents of different states. It was so in *Ogden* v. *Saunders*, *supra*, and the question was whether a discharge of a debtor was valid against a creditor who was a citizen of another state. It was decided in the negative. But in the opinion of Justice JOHNSON he says : "As between its own citizens, what ever be the origin of the contract, there is now no question to be made on the effect of such a discharge." It is to be noted that the court is here invoked to administer a law of this State between its own resident citizens. A quotation from the opinion of Chief Justice TANEY in *Cook* v. *Moffat, supra*, is pertinent and, as it seems to me sound : "According to established principles of jurisprudence such (insolvent) laws have always been held valid and binding within the territorial limits of the state by which they are passed, although they may act upon contracts made in another country, or upon the citizens of another nation ; and they have never been considered, on that account, as an infringement upon the rights of other nations or their citizens. But beyond the limits of the state they have no force, except such as may be given to them by comity.  *  *  But how far this comity should be extended would be exclu-

sively a question for each state to decide for itself, by its own proper tribunal." This is but stating in substance that states may pass laws having effect within their respective limits, and binding their own courts, leaving the effect in other states to be determined by their own tribunal. If this assignee were seeking this remedy in New York then the question of comity would arise. It would be for the court there to say whether, upon the ground of comity, it would enforce a plain statutory remedy of this State as against a contract executed in that state between citizens of this State.

In *Marsh* v. *Putnam*, *supra*, it was held that a certificate of discharge under the insolvent law of Massachusetts is a bar to an action on a contract between two citizens of that state, though made and to be performed in another state.

In *Gardner* v. *Lewis*, 7 Gill's Rep. (Md.) 377, the action was trover under a statute like ours, and upon similar facts, and the court in a rigorous and learned opinion sustained the plaintiff's right of recovery; holding that their courts were bound to observe and enforce the statutory provisions of their own state, and that a nation will not suffer its own citizens to evade the operation of its own fundamental policy or laws, or to commit fraud, in violation of them, by any acts or contracts made, with that design, in a foreign country, and it will judge for itself how far it will adopt, or how far it will reject, any such act or contracts. We think this is a sound as well as wholesome view of the law. Chief Justice MARSHALL, in the case of *Ogden* v. *Saunders*, *supra*, said : " It is a general rule expressly recognized by the court in *Sturges* v. *Crowninshield*, that the positive authority of a decision is co-extensive only with the facts on which it is made. Subjecting all the reported insolvency cases to this rule I think there is no one in conflict with the two cases last cited from Massachusetts and Maryland. We therefore consider that it is the right and duty of this court to enforce the statute according to its plain terms, and to hold that the defendant company shall not escape liability for an act in fraud of our

laws upon the plea that it occurred beyond the line of the State.

For the purpose of showing the value of the property taken by the defendant, the plaintiff offered to show the price for which the West Rutland Company sold the property to the defendant, and the same was admitted not as conclusive, but to be considered with the other evidence in the case, and in connection with the fact that it was taken upon a demand against the vendor of the property. To the admission of this evidence the defendant excepted. We hold that the evidence was admissible, to be considered as indicated in the ruling. Price generally, if not always, has more or less reference to value. It must therefore tend in some measure to show value. Its weight is dependent upon the circumstances of the sale. If the sale is usual in all respects, the price would tend more strongly to show actual value than if the sale is peculiar as in this case; but it cannot be said that, because it is peculiar, it has no relation to the value. It is hardly conceivable that buyers and sellers should not have value in mind in fixing price. Price cannot in any case be conclusive of value. Yet it is concededly competent to show price as bearing on value in some cases. Where is the line to be drawn? It would seem to be better to admit the evidence of price in all cases together with the circumstances of the sale, and let the evidence be guarded by proper instructions.

It is further claimed that the plaintiff cannot recover because no sufficient demand for the return of the property was shown. We think no demand was necessary to entitle the plaintiff to recover.

The contract by which the defendant obtained the property was by the statute *void*. The defendant appropriated the property to its use by a sale and otherwise. There was concededly an actual conversion and no power to restore. The harsh rule was early established in this State, unlike the rule in some other states, that where one purchases personal property of a person in possession of it, but who is not the true

owner and has no right to sell it, and the purchaser takes possession, claiming title to it as owner, and puts it to use, this is an actual conversion and makes him liable in trover to the owner, without any demand or notice, though he purchased in good faith of one whom he supposed to be the owner and entitled to sell it. *Riford* v. *Montgomery*, 7 Vt. 411.

The case at bar is stronger because here the vendor not only had no right to sell the property to the vendee, to be applied on the debt, thereby giving a preference, but the vendee was chargeable with knowledge of that fact. There is no necessity of proof of a demand and refusal for the purpose of establishing a conversion, when the conversion is otherwise established. It is only evidence of a conversion where the party might have delivered the property if he would. Roberts Dig. p. 709. Defendant's counsel cites *Schuman, Assignee,* v. *Fleckenstein*, 15 N. B. R. 224. That action was brought by the assignee of a bankrupt under the U. S. Bankrupt Act (sec. 5128 of the U. S. R. S.) to recover from the defendant the sum of $311, the alleged value of certain property transferred by the bankrupt to the defendant within two months prior to the filing of the petition against him in bankruptcy, contrary to the provision of said action, which is in substance and almost in terms the same as section 1860 of our Revised Laws. The defendant demurred and for causes of demurrer assigned that the complaint, a code proceeding, did not allege a demand and refusal of the property, *or any fact showing its conversion by the defendant.*

The court sustained the demurrer, holding that an action to recover the value of property can only be maintained when the property itself has been actually or constructively converted to the use of the defendant, and the complaint must therefore allege a conversion in terms or its legal equivalent, a demand and refusal. Under that decision either is sufficient.

Here we have a conversion in fact. Speaking of the action of trover, Chitty (Chit. Pl. page 170) puts it in the same way: "A demand and refusal are necessary in all cases when the defendant became in the first instance lawfully possessed of the

goods; and the plaintiff is not prepared to prove some distinct actual conversion." So in *Triscony* v. *Orr*, 49 Cal. 617, it was held that no distinct and actual conversion being shown, the plaintiff must allege and prove a demand and refusal before he can recover. To the same effect see also *Brooks* v. *Mc-Craken*, 10 N. B. R., 466. The proof of demand and refusal constitutes evidence of conversion, or constructive conversion as sometimes called, and is the equivalent of proof of actual conversion, either of which is sufficient to entitle the plaintiff to recover, where the other elements are established. See *Tapley* v. *Forbes*, 84 Mass. 20; *Larkin* v. *Hapgood*, 56 Vt. 597.

We think there was no error in the instructions to the jury as to the rule of damages. It was the value of the property at the time the defendant took it. If the clause that the plaintiff was entitled to recover the value of the dynamo as it stood in the mill was fairly and clearly referrable to the damage done to the insolvent's other property not taken by the defendant, it would doubtless be error; but we do not so construe it or think it was so understood by the jury. But we do think that the jury by inadvertence included in the special verdict as to the dynamo, the three electric lamps and the cost of setting them up. The correspondence in the figures makes this very apparent. The amount of this with interest was $171.47. This the plaintiff offers to remit, and asks leave to file a *remittitur.* This, we think, should be allowed, but the defendant should have costs in this court. Judgment is rendered for the plaintiff for the amount of the judgment below less said sum remitted, with costs, less the defendant's costs in this court.