H. J. SLAYTON, TRUSTEE IN BANKRUPTCY *v.* E. A. DROWN.

October Term, 1918.

Present:   WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 8, 1919.

*Bankruptcy—Preference—Evidence—Value of Property—Price
at Which Sold—Harmless Error—Immaterial Evidence—
Sufficiency of Exception—Opinion—Knowledge of Bank-
rupt's   Condition—Preferred   Claim—Rent—Recoverable
Preference—Pleading—Set-off.*

In an action by a trustee in bankruptcy to recover a preference, testi-
mony by the plaintiff of his continuous possession of the bank-
rupt's stock of goods from a certain date, and of their value, was
admissible, in connection with other evidence, as bearing upon the
value of the stock of goods at the date of the alleged preference.

Testimony by the plaintiff identifying the appraisers mentioned in the
record, one of whom afterwards qualified and testified to the value
of the property of the bankrupt estate at the time of the appraisal,
was properly admitted.

Testimony by the plaintiff that he first took possession of the bankrupt
stock of goods by virtue of two writs of attachment was harmless.

The price at which property is sold is ordinarily admissible as evi-
dence of value, though not conclusive; its weight being dependent
upon the circumstances surrounding the sale.

To sustain an objection to the admission of evidence on the ground of
immateriality alone, it ought to so appear beyond a reasonable
doubt, for, where the evidence is not clearly irrelevant, it should
be allowed to go to the jury, leaving them to determine its weight.

Testimony by the bankrupt that he had paid certain notes which he
owed the defendant, but that there was one note that was not paid,
and that, at some time within four months of the filing of the

petition in bankruptcy, he told the defendant why he did not pay
that note, and that he could not pay it at that time, but would do
so later on, was admissible as a link in the chain of evidence
tending to show defendant's knowledge of the bankrupt's in-
solvency at the time of the alleged preference.

Testimony by the bankrupt that he could tell the value of his stock
of goods at the time of the alleged preference only by "guess"
was not objectionable on the ground that guesswork was not ad-
missible in evidence, since the testimony, taken as a whole, shows
that the witness was not guessing, but was giving his best judg-
ment as to the value of his stock at that time.

A witness, who appears to have acquired some knowledge that persons
in general do not have in respect of a matter in question, may
properly be allowed to give his opinion in respect thereof.

Where the only exception taken to a ruling was, "We save the ques-
tion, if the court please", no question is raised for review.

Evidence that, prior to the date of the alleged preference, one who was
then acting for the defendant and others in collecting money from
the bankrupt, told the defendant that he did not think the bank-
rupt had the amount of money in the goods that he (bankrupt)
supposed he had, and expressed the belief that the bankrupt was
insolvent, was admissible as tending to show defendant's knowl-
edge of the bankrupt's insolvency.

A debt for rent stands like any debt before the court of bankruptcy,
without preference in the absence of any state or Federal statute
giving it preference.

Under sections 60a and 60b of the Federal Bankruptcy Act, if a creditor
receives what he has reason to believe is more than his proportion-
ate share of the bankrupt's property as it then existed at the
very time of the alleged preference, and it turns out to be as he
believes, he has received a preference that is recoverable by the
trustee.

Whether a payment by an insolvent to a creditor constitutes a voidable
preference under sections 60a and 60b of the Federal Bankruptcy
Act depends upon whether the creditor received a greater per-
centage of his estate than other creditors of the same class would
have received if the assets had then been distributed *pro rata*, and
not upon his having received more than the creditors of the same
class might ultimately receive on the final settlement of the estate.

Under the Federal Bankruptcy Act, a creditor, in accepting a transfer
of property from his debtor, is required to exercise ordinary pru-

dence to ascertain his debtor's solvency, and, if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired by investigation.

The Practice Act (G. L. 1790) did not change the practice under set-off; and that matter must be pleaded to be in issue.

Where a case was denominated as an action of assumpsit, and was so treated throughout the trial, it will be so treated on review.

ACTION OF CONTRACT to recover a preference. Plea, the general issue with notice. Trial by jury at the March Term, 1918, Washington County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*A. A. Sargent* and *John W. Gordon* for the defendant.

*Elwin L. Scott* and *Earle R. Davis* for the plaintiff.

MILES, J.   This is an action by the trustee to recover $1,200, claimed to have been paid to the defendant by the bankrupt as a preference, December 9, 1916. The plaintiff recovered judgment below, and the case is brought here on numerous exceptions, numbering from one to twenty-seven, inclusive, and we take them up in the order in which they are presented in the defendant's brief.

Exceptions one to nine, inclusive, were to the testimony of the trustee which was, in substance, as follows: That the appraisers of the bankrupt estate were a Mr. Mitchell of Montpelier, proprietor of the McCuen store, and a Mr. Brooks, interested in the Homer Fitts Co. of Barre, Vt.; that their business was that of dry goods merchants, the same as that of the bankrupt; that the witness had the bankrupt stock of goods in charge on February 1, 1917; that his possession from February 1st, to the time Vaughan was declared a bankrupt on February 19th, was by virtue of two writs of attachment; that the stock was sold at private sale in bulk; that he had had stores of part dry goods and part of something else to a certain extent similar to the goods of the bankrupt estate; that he paid out of the sale $1,197; that he was acquainted with the bankrupt stock of goods; that from this experience he had acquired a knowledge enabling him to give a valuation of the bankrupt stock of goods;

that the appraisers took an account of each article and put a price after it; that he was present during a greater part of the time the appraisers were taking the inventory; that he found no other property than that of which he took possession; that after the inventory was taken he had a copy; that he also took possession of the furniture of the store of the kind of which he had had experience; that he had had quite a good many estates where he had the same kind of goods to handle as were in the bankrupt estate; that the sale was at their fair cash value.

The main objection to much of this testimony was that it had no tendency to show that the defendant had reasonable cause to believe that the payment in question would effect a preference. This objection, no doubt, would be sound, if the evidence was offered and received for the purpose of showing that the defendant had reasonable cause to believe that the payment would effect a preference and the offered evidence had no tendency, as a link in the chain of evidence, to establish any other fact in issue and on trial.

The transcript shows that that evidence was offered and received as bearing in part, at least, upon the value of the bankrupt's stock of goods, December 9, 1916, the date of the alleged preference. This evidence without being connected with the value of the bankrupt estate December 9, 1916, would be subject to the objection made; for on February 1, 1917, the estate may have been wholly changed. In order, therefore, to make such testimony admissible, it was necessary for the plaintiff to show such connection. But there was evidence tending to show such connection. There was evidence tending to show that between December 9, 1916, and February 1, 1917, the bankrupt had sold from his stock of goods about $2,000 worth and had purchased during that time and added to that stock about $500 worth of goods, reducing the stock of goods on hand December 9, 1916, in the sum of fifteen hundred dollars, which, added to the bankrupt estate or stock of goods on hand February 1, 1917, would have a tendency to show the value of the bankrupt stock December 9, 1916. Counsel discuss at length the weight of the evidence tending to prove these facts, and reasonable minds may differ upon that matter; but the evidence was for the jury, and their finding settles that question, and its weight is not for us. The court in its charge, which was not excepted to, limited the evidence to the value of the goods December 9, 1916, and for that purpose the evidence was admissible.

There is no force in the exception to the trustee's testimony as to the appraisers. It was received to identify them as the appraisers mentioned in the record, one of whom afterwards qualified and testified to the value of the property of the bankrupt estate at the time of the appraisal.

The exception to the testimony of the trustee that he took possession of the bankrupt stock of goods February 1, 1917, is without merit. It was simply showing that he took lawful possession, and no harm was done the defendant by showing that possession was by virtue of two writs of attachment.

The exception to the trustee's testimony that he took possession of the bankrupt stock on February 1st, and continued to hold it until its sale on March 28th, and that it was sold at private sale and in bulk is not well taken. The defendant says that he objected to the evidence on the ground that the sale was in bulk. We are unable to find such ground in the transcript. The ground of the exception, as we understand it, was that the evidence did not show that the defendant had reasonable ground to believe that he was getting a preference; that the evidence did not relate back to the alleged preference; and that the judgment of the witness was not material. The grounds of objection which were in fact stated have been already disposed of and require no farther discussion. If the ground of the objection had been that the sale was in bulk, we could find no error in the reception of the evidence. The objection would be to the weight and not to its admissibility. The price at which property is sold is ordinarily admissible as evidence of value, though not conclusive, its weight being dependent upon the circumstances surrounding the sale. *Crampton* v. *Valido Marble Co.*, 60 Vt. 291, 15 Atl. 153, 1 L. R. A. 120. See *Hildreth* v. *Fitts*, 53 Vt. 684.

The exception to the trustee's testimony that he paid out of the proceeds of the sale of the bankrupt property, $1,197, rests upon the objection that the evidence was immaterial. To sustain an objection on the ground of immateriality alone, it ought to so appear beyond a reasonable doubt; for it is a settled rule where the evidence is not clearly irrelevant, to allow it to go to the jury, leaving them to determine its weight. 10 R. C. L. 927, par. 88; *Sherman* v. *Kinney*, 1 A. K. Marsh (Ky.) 3, 10 Am. Dec. 705. In any view it was harmless.

The remaining portion of the trustee's testimony embraced

in the defendant's first nine exceptions is sufficiently answered in what has already been said.

The bankrupt, called as a witness by the plaintiff, had testified without objection that he had paid certain notes which he owed the defendant, from time to time, but that there was one note that went into the Quarry Bank of Barre that was not paid. Subject to the defendant's objection and exception on the ground that the evidence had no tendency to show that the defendant had reasonable ground to believe that he was getting a preference within four months of the filing of the petition in bankruptcy, the witness testified, in substance, that he did not know as he could give the date, but at some time he made known to the defendant why he did not pay the note that went into the Barre Bank, and told him that he could not pay it at that time, but would do so later on. This was a part of the witness' testimony showing his dealings with and relation to the defendant, as a link in the chain of the evidence tending to show that the defendant knew or ought to have known that the bankrupt was insolvent when the alleged payment was made December 9, 1916, and in connection with other portions of the evidence we think it had such tendency.

Exceptions 11 and 12 raise questions already disposed of and require no further treatment.

Exception 13 was to the bankrupt's testimony that he could tell the value of his stock of goods on December 9th only by "guess." The objection was placed upon the ground that guesswork was not admissible in evidence, which is true; but the testimony, taken as a whole, shows that the witness was not guessing as to the value of his stock at that time, but was giving his best judgment as to its value. He had purchased the goods, was selling them at the time, and was the manager of the store, and it cannot be doubted but that he knew the cost and selling price of every article in his store. He was the witness of all witnesses best qualified to express an opinion of the value of those goods. A witness, who appears to have acquired some knowledge that persons in general do not have in respect of a matter in question, may properly be allowed to give his opinion in respect thereof (*Griffin* v. *B. & M. R. R.*, 87 Vt. 278, 89 Atl. 220); besides, the evidence upon this point is more favorable to the defendant than otherwise. We find no error in the receipt of this evidence. We have treated this exception at length, not

because we seriously thought it required it, but because the defendant in his oral argument asked us to specially consider it.

No exception is reserved to which defendant's 14th relates, and so requires no consideration.

In examining the transcript, on the page to which our attention is called by the defendant in his brief, we find the only exception taken under his exception 15 is: "We save the question, if the court please." This raises no question for this Court. *Paterson's Admr.* v. *M. W. of Am.*, 89 Vt. 305, 95 Atl. 692; *Newton* v. *Am. Car Sprinkler Co.*, 88 Vt. 487, 92 Atl. 831; *State* v. *Pierce*, 87 Vt. 144, 88 Atl. 740.

What we have said under defendant's number 13 disposes of his 16.

Defendant's number 17 was an exception to conversation between one Millar and the defendant, in which Millar told the defendant that he did not think the bankrupt had the amount of money in the goods that he, Vaughan, supposed he had. The ground of this objection was that Millar's opinion would not charge the defendant with knowledge of the bankrupt's insolvency. That alone, it is true, would not be sufficient; but in the circumstances of the case, as a link in the chain of evidence bearing upon that matter, it had a tendency to put the defendant, as a careful and prudent man, upon inquiry, at least. Millar was acting for the defendant and certain other creditors of the bankrupt at the time of the conversation, under an agreement with the bankrupt, in substance, that from the cash sales of all the goods sold out of his store, fifty per cent. should be turned over to Millar daily, as trustee of those creditors, which sum should be applied upon the claims of those creditors in proportion to the relative amount of such claims; and the bankrupt further agreed not to take out of the business any of the goods or money then in the store nor to mortgage any of the goods or in any way to encumber them. On one or more occasions, before the alleged preference, in the presence of the defendant, Millar expressed the belief that the defendant was insolvent, or said: "I guess Vaughan is going up." The exception is not sustained.

Defendant's exception 18 was to the court's overruling his motion for a verdict, and rests upon the claim that there was no evidence that the defendant received a greater percentage of his indebtedness than other creditors of the same class to which

he belonged. The defendant bases this claim upon the fact that the bankrupt had no other landlord creditor, and that therefore the defendant was in a class by himself. Creditors are of the same class when they are entitled to the same percentage on their claims (1 Loveland on Bankruptcy, 1018), and when they belong to the classes specified in the Bankruptcy Act. The only class the defendant could possibly belong to was "those who by the laws of the states or of the United States are entitled to priority," and the defendant was not one of those. There was no error in overruling the motion.

The defendant argues in effect that a debt for rent stands differently from debts due for merchandise, goods, chattels, etc., and cites *In re Barrett*, 6 Am. B. R. 199, as directly in point; but upon examination of the case we are not inclined to so regard it. The case turned on a finding that the defendant had not reasonable cause to believe that the bankrupt was insolvent. The referee who wrote the opinion discusses rent to some length, but not to the extent claimed by the defendant. The law that rent stands like any debt before the court of bankruptcy, without preference in the absence of any state or Federal statute giving it preference, is held in *Re Chaudron* (D. C.) 24 Am. B. R. 811, and note; *Vollmer* v. *McFadgen*, 20 Am. B. R. 540, 161 Fed. 914, 88 C. C. A. 605, *Id.* (D. C.) 19 Am. B. R. 481, 156 Fed. 715.

The defendant further argues, upon his motion for a verdict, that the case shows that the defendant and the bankrupt conducted themselves in such a manner, with reference to the payment of the rent, that the terms of the lease were so modified that the rent did not become in arrears until after demand, and that the payment alleged to be a preference, being paid on demand, was the payment of a present indebtedness. Whether such a state of facts would relieve the payment in question of the imputation of being a preference, we are not called upon to decide; for the claim is disputed by the plaintiff, and the testimony upon which the defendant relies in support of his argument is contradicted by the plaintiff's evidence, which, if material, was for the jury and not for the court.

The defendant further contends that this motion should have been allowed because there was no evidence tending to show that the bankrupt was insolvent at the time of the alleged preference. It is enough to say of this claim that the question here

raised has already been disposed of earlier in this opinion on the question of the admissibility of certain evidence. This holding also disposes of defendant's number 19. The motion was properly overruled.

The defendant's exceptions numbers 20, 21, 22, and 22a to the charge of the court relate to the same matter and raise the same questions as were raised in the objections to evidence showing the value of the bankrupt stock of goods after the same came into the possession of the trustee in February, and nothing further need be said than is said in relation to those exceptions.

The charge of the court to which exception 23 relates is as follows: "The test of a preference is the payment out of the bankrupt property of a larger percentage of the creditor's claim than others of the same class receive." The ground of the exception was: "It don't make any difference what the creditor received; it is what they would have received as of a going concern on the day of the transfer." The substance of this objection is that the court erred in the use of the word, "receive," and that in its place it should have used the words: "would have received as of a going concern on the day of the transfer." This was the only error pointed out to the court as existing in that portion of the charge excepted to, and the question and only question raised by this exception is: Should the court have charged in the respects suggested by the defendant? To answer this question it is necessary to determine to what part of the case it is directed and applies. There is no question raised but that the payment was made, and that it was made within four months before the petition in bankruptcy was filed, and we have already held earlier in the opinion that there was evidence tending to show that the bankrupt was insolvent at the time of the alleged preference. In these circumstances there remained to be construed to the jury for application to the facts in the case only so much of 60a of the Bankruptcy Act as reads as follows: "And the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The defendant argues that the charge upon this point places the test of preference upon the distribution of the estate at the end of litigation, and not upon what the creditor would have received if the bankrupt estate had been liquidated at the date of the alleged preference. The plaintiff claims that such is the

test of a preference; and the question to be determined here is whether the payment of an insolvent to his creditor of only such part of his creditor's debt as such creditor would be entitled to receive, if all the debtor's property liable to the payment of his debts should be apportioned among his creditors at the time of the alleged preference, amounts to a preference within the provisions of 60b of the Bankruptcy Act.

The case shows that the defendant received less than fifty per cent. of his debt against the bankrupt, and the evidence tended to show that the bankrupt had assets exceeding fifty per cent. of his liabilities at the time of that payment. In this state of the case, it became necessary for the court to instruct the jury upon this point. In disposing of the question here presented, it is necessary to take into consideration section 60b as well as section 60a of the Bankruptcy Act.

Our attention has not been called to any case where the present question, here raised, has been determined by the Supreme Court of the United States. We find cases decided by that Court where questions related to it have been discussed, but in none of those do we find where the question is directly determined. We are therefore compelled to rely upon our own construction of sections 60a and 60b.

Section 60a, so far as is material, provides: ''A person shall be deemed to have given a preference, if, being insolvent, he has, within four months before the filing of the petition or after the filing of the petition and before the adjudication, * * * made a transfer of any of his property and the effect * * * of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.''

Section 60b, so far as is here material, provides: ''If a bankrupt shall have * * * made a transfer of any of his property, and if, at the time of the transfer * * * being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it * * * shall then have reasonable cause to believe that the * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person.''

Section 60a seems to refer to the condition of the bankrupt estate at the time of the alleged preference, and the ability of

the bankrupt to pay to his other creditors at the time of the alleged preference as large a percentage as he paid the alleged preferred creditor; and this construction is strengthened by the provisions in section 60b. To recover the payment, the trustee must show that the payment at the time it was made operated then as a preference, and that the defendant *"then"* had reasonable cause to believe that the payment would effect a preference. This language means no more than this: If the creditor receives what he had reason to believe was more than his proportionate share of the bankrupt's property, as it *then* existed at the very time of the alleged preference, and it turns out to be as he believes, he has received a preference that is recoverable by the trustee. Such is the view taken in the case of *Herzberg* v. *Riddle,* 171 Ala. 368, 54 South. 635, in which it is said: "If a man's debtor who is solvent pays him his debt in full, surely there is no ground to suspect a preference because every other creditor can compel payment; but if he accept all of his debt, or a large part thereof, from a debtor known or suspected to be hopelessly insolvent, then he may know or have reasonable cause to believe that a preference is made in violation of the statute. But if he accepts only that part of his debt to which he would be entitled if all the property liable to the debts should be apportioned among the creditors, then, of course, there is no preference such as is prohibited by the statute, though the debtor may be hopelessly insolvent." This same view is taken in *Dry Goods Co.* v. *Bertenshaw,* 68 Kansas 734, 75 Pac. 1027.

It should be kept in mind that we are here dealing with a voidable preference, so-called, as distinguished from one that is not voidable. A preference may be given that is not voidable, as well as one that is. *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438, 47, 45 L. ed. 1171, 1177, 21 Sup. Ct. 906. And it is necessary to carefully observe the distinction when dealing with a preference that is voidable.

To render a payment voidable, the payment must have been made within four months before the filing of the petition or after the filing of the petition and before the adjudication, the debtor then being insolvent, and such payment must *then* have operated as a preference which the creditor *then* had reasonable cause to believe would effect a preference. The use of the word "then" indicates that the payment must presently operate to give the creditor a greater percentage of his debt than the other

creditors of the same class could receive out of the debtor's remaining assets if *then* distributed among them.

The fault in the plaintiff's contention that the payment received by the alleged preferred creditor is to be measured by what the other creditors received on the final settlement of the bankrupt estate is apparent when considered in connection with a few familiar illustrations. Suppose that, after the alleged payment, the debtor in the meantime mismanages the business, or successfully conceals a portion or the whole of his property, or a fire destroys his assets, or a world war ruins his business, and, that in the final settlement, the expense of the management and settlement of the estate, involving an expensive litigation, leaves nothing, or only a small part to be distributed among the other creditors; in such circumstances, could it be said that a creditor having received a payment on his debt of no greater percentage than the bankrupt was *then* able to pay all his other creditors of the same class was a preference, and such fact reasonable ground to believe that such payment would effect a preference, even though it should ultimately turn out on the closing up and final settlement of the bankrupt estate that nothing or only a small per cent., much less than the per cent. paid the alleged preferred creditor, was left to pay the other creditors? Can it be reasonably inferred that it was the intention of Congress in the passage of the Bankruptcy Act to make a payment of the bankrupt to one of his creditors, of a sum not exceeding a per cent. which he was able to pay from his assets subject to the payments of his debts, to each of his other creditors, a preference voidable by the trustee? Must the preferred creditor be charged with a belief that no one would have entertained at the time the payment was made. We think the act was not passed with any such result intended. It cannot be conceived that the act contemplates that the creditor receiving a payment from an insolvent debtor should be charged with reasonable cause to believe that the payment would effect a preference, when, if the exact facts had been known to him at the time the payment was made, they would not have disclosed that the payment was a preference. To establish that the defendant had reasonable cause to believe that the payment would effect a preference, the burden was upon the trustee to show that such was the effect of the payment at the time it was made; for otherwise there would be no basis for the belief.

In the case at bar the plaintiff's own evidence disclosed that the payment to the defendant was of no greater per cent. of his debt than the insolvent was *then* able to pay to his other creditors. Indeed, he could have paid to them a much larger per cent. of their debts at that time than he paid to the defendant, while up to the present time no one knows what the bankrupt's estate will be able to pay the creditors on final settlement.

The portion of the charge excepted to made the recovery to depend, not upon the defendant's having received a greater percentage of the bankrupt's estate than other creditors of the same class would have received if the assets had then been distributed *pro rata,* but upon his having received more than other creditors of the same class might ultimately receive on the final settlement of the estate. As we have seen this was error and harmful error, and the exception to the charge must be sustained.

Defendant's exception 24 was to the charge of the trial court where it said: "Notice of facts which incite a person of reasonable prudence to an inquiry under similar circumstances is notice of the fact which a reasonably diligent inquiry would * * * * *", on the ground that it would mislead the jury. It is evident that some part of the charge the reporter failed to get, and, while this Court will not resort to speculation to sustain a bill of exceptions, it is so obvious that the omitted word was, "discover," we do not feel, in completing the sentence by supplying that word, that we are speculating. With the sentence thus supplied, and looking at the charge as a whole, we do not think the defendant's exception can be sustained.

The court in this connection said: "The creditor must have such a knowledge of facts as to induce a reasonable belief of the preference." Then further along in his charge, in addition to what has already been quoted, the court said: "If the creditor accepts a transfer under circumstances which would lead a man of ordinary prudence and sagacity to believe that he was being preferred by the debtor over other creditors of the same class, without making investigation, he will be charged with all the knowledge which he would have acquired had he performed his duty in this regard. There must be something more than a mere guess or suspicion, however. Reasonable cause to believe is not the equivalent of reasonable cause to suspect. If the suspicion is based upon facts which would incite an intelligent business man to an inquiry which would have disclosed that the transfer

would effect a preference, it is the equivalent of a reasonable cause to believe, within the meaning of the statute.'' In this portion of the court's charge, it substantially follows the rule laid down in 3 R. C. L. 278, par. 105. Ordinary prudence is required of a creditor to ascertain his debtor's solvency, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired if he had investigated. *Buchanan* v. *Smith,* 16 Wall. 277, 21 L. ed. 280. Almost the exact language of that portion of the charge excepted to is stated to be the law in 7 C. J., 163, par. 264. This exception is not sustained.

Exception 25 requires no further consideration than we have already given to the question here raised in our treatment of exception 18.

Exception 26 was to the court's failure to charge that the defendant was entitled to an offset for the rent from December 9th to the date of bankruptcy, if the jury should find that he received a preference.

The complaint in this case is in general assumpsit, and the answer is a general denial and a special informal traverse or notice; but there is no complaint or declaration in set-off nor plea or answer in set-off in bar. The Practice Act did not change the practice under set-off. G. L. 1790. The practice, relating to that subject, therefore, is the same now as it was before the passage of that act. It becomes now, as then, necessary to plead it if it is relied upon by way of defence or as a counter action. The matter of set-off, not having been pleaded, was not an issue in the case upon which the court was required to charge. *Fulton* v. *Willey,* 32 Vt. 762. This holding dispenses with any consideration of the items of $32 for money loaned by the defendant, and $21.50 for mileages sold the bankrupt. Very likely this is the reason why the court did not charge upon this matter.

There is no merit in exception 27. The case was tried as it was denominated, as an action of assumpsit, without objection to the form, and was so treated all through the trial, and it is now too late to raise that question. By disposing of the case in this way we do not wish to be understood as holding that if the action was tort it would be error to allow a remittitur. See *Crampton* v. *Valido Marble Co.,* 60 Vt. 291, 15 Atl. 153, 1 L. R. A. 120.

*Judgment reversed, and cause remanded.*