In re WILLIAM WOOD'S WILL.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.,
CHASE, Supr. J.

Opinion filed October 7, 1921.

*Refusal to Set Verdict Aside Not Reviewable If Supported by Evidence—Right to Trial by Jury in Will Contest—Opinion Evidence by Lay Witness—Extent of Cross-examination in Trial Court's Discretion—Will Contest—Material Evidence —Impeaching Question Must Be Specific.*

1. Where there is evidence to support the verdict of the jury, the refusal of the trial court to set it aside as against the weight of the evidence will not be disturbed on review.
2. Under G. L. 3466, the right to a trial by jury in a will contest is absolute and not a matter of favor, and the trial court has only those inherent powers in dealing with the verdict which apply generally to all civil jury trials.

3. A lay witness becomes competent to express his opinion as to the mental status of another only by virtue of testimony which he gives in court and upon which he bases his opinion.

4. The question of the competency of such a witness rests largely in the discretion of the trial court; the question of credibility and the weight to be given the testimony being left to the jury.

5. The attesting witnesses to a will were not incompetent to express their opinions as to the testator's mental capacity merely because they were strangers to him and saw him only at the time of the execution of the will, and then for a short time.

6. The extent of cross-examination is in the discretion of the trial court, and the exercise of that discretion is not reviewable unless it was abused.

7. In a will contest on the grounds of mental incapacity and undue influence, where proponent and his wife sold their property in another state so that they could go to the testator's farm where they cared for him until his death, the testimony of the wife that she told the testator that the property was sold at a sacrifice was admissible, as against the sole objection of immateriality; such evidence not being immaterial beyond a reasonable doubt.

8. The question asked the proponent's wife, who was not a party, "Did you ever refer to him (the testator) as the old devil?" for the purpose of her impeachment, was properly excluded for not specifying time, place, or occasion.

APPEAL from a decree of the probate court for the District of Orleans establishing an instrument as the last will and testament of William Wood. Plea, lack of testamentary capacity and undue influence. Trial by jury at the September Term, 1919, Orleans County, *Moulton,* J., presiding. Verdict and judgment for the proponent. The contestants excepted. The opinion states the case.

*F. W. Baldwin* and *W. A. Dutton* for the contestants.

*Frank D. Thompson* for the proponent.

CHASE, Supr. J.    At the trial of this cause, which was an appeal from the decree of the probate court for the district

of Orleans, the jury returned a verdict "that the instrument propounded is the last will and testament of the said William Wood" and two special verdicts to the effect that the testator at the time he executed the will had sufficient mental capacity so to do and was not under the undue influence of the proponent James Wood and the wife of James, or either of them. The proponent was a nephew of William Wood. The contestants are all nephews and nieces. Mr. Wood never married and left no nearer relatives. He died, on his farm at Greensboro, February 27, 1919, being almost eighty-seven years old. His will was executed July 22, 1918.

[1] Before judgment the contestants filed a motion to set aside the verdicts: "First. That said verdict is against the weight of the evidence that was presented in said case. Second. That said verdict is manifestly contrary to the instructions of the court, in his charge to the jury in the trial of said cause." The transcript of the evidence and the charge were referred to and made a part of the motion. It was denied.

The claim now made is that, while the court admittedly ruled as a matter of discretion, the action it took was under the circumstances an abuse of discretion which amounted to reversible error.

The transcript shows that the contestants produced many witnesses whose testimony tended to prove that the testator lacked the necessary mental capacity to make a will when he executed the instrument in suit, and that he then was under the undue influence of the proponent and his wife. It is also true that the case discloses a large amount of testimony in support of the proponent's claim that he was mentally alert enough to possess, and did possess, testamentary capacity and that he acted wholly in accordance with his own desires. This motion called for a decision which the judges, who had observed the witnesses when they testified and were acquainted with the many things that develop during a trial which cannot be preserved in the bound volumes of the transcript, were especially qualified to render. They had a peculiar opportunity to know whether the verdict was against the weight of the evidence when weighed by those having the best means to test it. When, as here, there is evidence which will support a verdict, the action of the trial court in refusing to set it aside will not be disturbed on review. *French v. Wheldon,* 91 Vt. 64, 99 Atl. 232; *German v. Bennington and*

*Rutland R. R. Co.,* 71 Vt. 70, 42 Atl. 972. The second ground of this motion was not briefed by the contestants.

[2]    At the time the motion to set aside the verdict was made the contestants also moved as follows: "That the court from a consideration of all the evidence presented at said hearing make a finding of facts. (1) That at the time that the supposed will was executed the said William Wood was not of sound mind and memory. (2) That the said William Wood at the time of the execution of said supposed will was unduly influenced thereto by the proponent James Wood and his wife, Mary Wood. (3) That the said supposed will is not the will of the said William Wood. That judgment be rendered that the said supposed will is not the will of the said William Wood."

In denying this motion the court held that the verdict was not advisory, and that it did not have the discretionary power to disregard it in view of the statute as it now exists. Of course, the sum and substance of the exception taken, which was to the refusal to grant the motion, is that the court refused to exercise its discretion. Nor do the contestants claim that they were entitled to more than to have a decision dictated by a sound and just discretion. This being so, we do not overlook the fact that the motion to set aside the verdict, which the court denied in its discretion, is so closely related to this motion and the granting of it so necessary as a preliminary step to the granting of this that the court could hardly exercise its discretion in overruling the first without in a very practical way exercising it as to the second also. Nevertheless, the ruling was made to rest upon the statute as a matter of law, and we will so treat it here.

*In re Peck's Estate,* 87 Vt. 194, 88 Atl. 568, is ample authority for the proposition that before No. 98 of the Acts of 1915 took effect such a motion as this was properly directed to the discretion of the trial court, which had power to grant it. But the amendment of 1915, which controlled at the time of this trial, took from the court the discretion it formerly had as to whether the trial should, or should not, be by jury in language to be found in G. L. 3466: "* * * And when the appeal is from a judgment allowing or disallowing an instrument purporting to be a last will and testament, a right to trial by jury shall follow."

This change in the statute was made after the law relating to compulsory references (G. L. 2071), and put such a case as

this among those unaffected by that section. *Hurlburt* v. *Miller's Estate,* 72 Vt. 110, 47 Atl. 393. The contestants recognize this but say that the amendment deprives the court only of its power to determine whether the issue should be submitted to a jury, and leaves it clothed with exactly the same power it had before as to its acceptance or rejection of the verdict. In this they lose sight, we think, of the precise thing which before enabled the court to disregard the verdict. Then the right of the parties to a jury trial depended in the first instance upon the discretion of the court, and a trial once begun by jury was subject from beginning to end to this same discretionary power. *In re Peck's Estate, supra.* Now the right to trial by jury is absolute. The court has no part in determining that. Unless it is waived there can be no other kind of trial. With the power gone to submit the issue to a jury or not as is thought best, the court no longer has the secondary power which flowed from the first to treat the entire proceeding as a matter of favor and eventually decide the issue itself contrary to the verdict rendered, if that course is prompted by its own views of what facts are established by the evidence. In such a case as this the court now has only those inherent powers in dealing with the verdict which apply generally to all civil jury trials and are not material here. There was no error in overruling this motion. *Collins* v. *Brazill,* 63 Ia. 432, 19 N. W. 338.

Yet the character of the investigation in a case of this kind and the rules governing the same are such that the trial court should, when properly appealed to, examine the record with deliberate care, and, if in its judgment injustice is done by the verdict, unhesitatingly exercise its supervisory power by setting it aside.

[3-5] Two of the attesting witnesses were entire strangers to the testator, went to his house with the lawyer who prepared the instrument for the purpose of acting as witnesses, and saw him only at that time. After testifying concerning the execution of the will, the appearance of Mr. Wood, his conduct and conversation, they were both permitted, against the objection and exception that a sufficient basis had not been shown, to give their opinion as to his mental capacity, basing it upon the testimony they had already given. It has long been the settled law of this State that a lay witness becomes competent to express his opinion concerning the mental status of another only by virtue of testi-

mony which he gives in court and upon which he bases his opinion. When he takes the stand he is considered incompetent. As his testimony develops his competency may, or may not, appear. No arbitrary standard of measurement as to quantity or quality can be fixed which will apply to every such witness and to every case. Yet the trial of causes requires that this question of competency must be determined whenever it arises and the matter rests, where of necessity it must, to a large extent in the sound discretion of the court; the question of credibility and the weight to be given the testimony being left to the jury. We cannot now say it was error to allow the jury to consider the opinions of these two witnesses for whatever they were worth merely because they saw the testator only once and then for a comparatively short time; especially since the business then being done was of a kind which would naturally direct their attention to his mental condition. *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 24 Atl. 253; *In re Estate of Martin,* 92 Vt. 362, 104 Atl. 100; *Maughan* v. *Estate of Burns,* 64 Vt. 316, 23 Atl. 583. See, also,*Hefflon* v. *Cashman,* 92 Vt. 323, 103 Atl. 1023.

[6]   It appeared that Mr. Thompson, the lawyer who drew the will, lived in Barton, and that a few days before it was executed he was called to the testator's farm to consult with him about it. He was carried there by a man named Dunn. A Professor Erwin rode out with them. When they reached Mr. Wood's home the attorney went inside and Erwin and Dunn sat down under a tree about forty feet from the front of the house the doors and windows of which were open. At the trial the attorney testified that no one was in the room with him and the testator upon that occasion, and that so far as he knew neither the proponent, his wife, nor any woman were in the house. Dunn testified that he heard conversation between Thompson and a lady right after he entered the house and heard her say that she thought if they stayed there and took care of the old man that they ought to have all his property. The contestants claimed this lady was the proponent's wife. On cross-examination Dunn was asked, subject to exception, if, at the time he was sitting under the tree and heard that conversation, his domestic affairs were troubling him. He answered, ''They was, yes, sir.'' As stated at the time, this was admitted ''to show that his mind was occupied by other matters and thus affecting his memory and his opportunities of observation.'' That it did show much in this

respect may be doubted. But it is plainly a bit of that kind of evidence which the trial court, in administering the powers of control it has over the extent to which cross-examination may go, may deal with as at the time reasonably seems best. Unless such powers are abused, rulings made under them are not subject to review. *Mears* v. *Daniels,* 84 Vt. 91, 78 Atl. 737; *State* v. *Bean,* 74 Vt. 111, 52 Atl. 269.

[7] The proponent and his wife were living in Connecticut when they were asked to come to Vermont to take care of Mr. Wood. In 1916 they sold their Connecticut property, a store, so that they could go to the testator's farm where they cared for him until his death. The wife of the proponent testified in direct examination, subject to exception on the ground that it was immaterial, that she told William Wood that the property in Connecticut was sold at a sacrifice of about one thousand dollars. This evidence was admissible under the rule laid down in the case *In re Esterbrook's Will,* 83 Vt. 229, 75 Atl. 1, to which attention was called in the recent case *In re Wells' Will,* 95 Vt. 16, 113 Atl. 822. It was not immaterial beyond a reasonable doubt and this was the only ground of objection. *Slayton, Tr.* v. *Drown,* 93 Vt. 290, 107 Atl. 307.

[8] After a lengthy cross-examination of the same witness and the redirect and recross-examination had taken place she was recalled by permission of court "for a further question in cross-examination." She then testified that she used to address Mr. Wood as "Uncle William," called him that to third persons, and didn't think there were any other names that she ever called him. The examination ended upon her being asked, "Did you ever refer to him as the old devil?" when objection was made and the question excluded. The witness was not a party, and the only possible purpose of the inquiry was for her impeachment. As the question did not specify time, place or occasion, it was properly excluded. *State* v. *Glynn,* 51 Vt. 577; *Niebyski* v. *Welcome,* 93 Vt. 418, 108 Atl. 341.

We find nothing in the colloquy which occurred during the cross-examination of Mrs. Allston that merits serious consideration. So far as there was anything improper, it was promptly and adequately dealt with by the court and resulted in no harm to the contestants.

*Judgment affirmed. To be certified to the probate court.*