STATE *v.* RAYMOND PARKER.

May Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 18, 1932.

*Searles & Graves* for the respondent.

*Oscar L. Shepard,* State's attorney, for the State.

MOULTON, J. The respondent is charged with the unlawful possession of intoxicating liquor, under the provisions of G. L. 6558 as amended by section 21, No. 204, Acts 1921. He was found guilty and the case is here upon his exceptions.

The liquor in question was found upon a search conducted in pursuance to a warrant, in an automobile, hidden in the woods upon the farm of Earl Blodgett, in Wheelock. The automobile bore New Hampshire license plates, and was identified by the engine number as one that the respondent had purchased, some two months before, from a dealer in Colebrook, New Hampshire, and of which the respondent had acknowledged the ownership shortly after the purchase.

The first exception briefed relates to the ruling of the court as to the qualification of A. O. Berry, one of the jurymen. Mr. Berry was a deputy sheriff, and had previously been engaged in assisting the sheriff in the enforcement of the prohibitory law. He had no connection with the case on trial, and had never talked with the sheriff concerning the respondent. He was asked, on *voir dire,* whether it would be embarrassing to him if the methods of the sheriff's department in obtaining evidence should be called in question in the case, and replied that it might possibly be so, although he did not think that he would be prejudiced thereby. He also said that he felt that he could decide the case according to the evidence, regardless of his position, and that he would weigh the evidence fairly, and would not convict without regard to the evidence. The court expressed the opinion that he was qualified, whereupon counsel for the respondent requested the court to exercise its discretion in the matter, and the ruling was made that, as a matter of law, the juryman was qualified to sit. The respondent excepted to the

ruling, and the court then remarked, in effect, that if the matter were one of discretion, the result would be the same. At the time, the respondent had exhausted his peremptory challenges.

It is argued that the question of the competency of a juryman is to be decided in the discretion of the trial court. But this is not so; the point is to be decided as a matter of law, because the law prescribes the necessary qualification, and the determination of it is left to the court, upon the evidence adduced upon the preliminary examination. *State* v. *Meaker*, 54 Vt. 112, 125. No question is made as to the legal competency of Mr. Berry, for the argument is only that the court might have excused him, in its discretion, because of his previous association, with the sheriff. No doubt a wide discretion exists in determining whether a qualified juryman shall participate in a trial, when some reason for excusing him such as age, ill health, the pressure of personal affairs, or some personal matter, sufficiently appears. See *Quinn's Admrs.* v. *Halbert*, 57 Vt. 178, 181, 182; *State* v. *Ward*, 60 Vt. 142, 156, 14 Atl. 187. But we are not concerned with the question whether the court should have exercised its discretion in the circumstances shown, because it is not before us. Our consideration is confined to the points raised below. *Picknell* v. *Bean*, 99 Vt. 39, 40, 130 Atl. 578; *Higgins, Admr.* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394. The ruling to which the exception was taken was that the juryman was legally competent, and the record shows that this was supported by the evidence. Besides, the question argued is, in any event, academic only, because, as we have seen, the court intimated that its discretion coincided with its views as to the legal situation. No error appears.

While the sheriff and his deputies were at the Blodgett farm at the time of the search, the respondent drove into the dooryard in an automobile bearing Massachusetts license plates, along with Arthur Daniels, who was a witness on behalf of the respondent. Although not under arrest, the sheriff searched Daniels' person and found thereon a sum of money. On cross-examination he was asked, "How much money did you have in your pocket that night?" An objection was interposed upon the ground that whatever knowledge the State may have had concerning the contents of his pockets had been obtained by an unlawful search and that the evidence was immaterial.

The question was allowed and he answered that he had about $165.

As to the first ground, what we have recently said in *State* v. *Stacy*, 104 Vt. 379, 160 Atl. 257, 266, disposes of the question of the admissibility of the evidence. The source of the State's information was not in issue. As to the second ground, the matter appearing upon cross-examination, the State's attorney, was not bound to state his object in putting the interrogatory. *State* v. *Fairbanks*, 101 Vt. 30, 33, 139 Atl. 918; *Knapp* v. *Wing*, 72 Vt. 334, 340, 47 Atl. 1075. Enough appears to warrant the inference that the State expected to show that Daniels was there for the purpose of purchasing the liquor, or a part of it, from the respondent. Under these circumstances it cannot be said that his possession of the sum of money was so clearly irrelevant that it was error to receive the evidence. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 124, 130 Atl. 758; *Gomez* v. *Hartwell*, 97 Vt. 147, 155, 122 Atl. 461; *In re Wells' Will*, 95 Vt. 16, 23, 113 Atl. 822; *In re Wood's Will*, 95 Vt. 407, 413, 115 Atl. 231; *Slayton, Tr.* v. *Drown*, 93 Vt. 290, 294, 107 Atl. 307.

On cross-examination the respondent was asked whether he was indebted to one Ray Jenne for automobile repairs. The question was allowed subject to exception, the objection being that it was incompetent and irrelevant. The answer was in the affirmative. The evidence tended to show that the respondent owned one of the automobiles in which the liquor was found, and that it had been kept in a barn adjoining the garage operated by Jenne. It did not appear that the repairs had been made upon this particular car, and the subject was not further pursued. But, under the circumstances, prejudice is not made affirmatively to appear, and so the error, if any, in admitting the evidence, was harmless. *Higgins, Admr.* v. *Metzger*, 101 Vt. 285, 296, 143 Atl. 394; *MacDonald* v. *Orton*, 99 Vt. 425, 431, 134 Atl. 599; *Cole* v. *North Danville Creamery Ass'n*, 103 Vt. 32, 42, 151 Atl. 568; *Berkley* v. *Burlington Cadillac Co., Inc.*, 97 Vt. 260, 269, 122 Atl. 665.

The court charged the jury that possession of liquor by the respondent meant that it was within his control or under his care or managament. The respondent excepted to the failure also to charge that "mere knowledge of the presence or location of the liquor at the Blodgett farm does not constitute posses-

sion.'' The additional instruction would have added nothing to the charge as given, concerning which, so far as it went, no complaint is made, and which was correct. *State* v. *Suiter,* 78 Vt. 391, 398, 63 Atl. 182. The exception is unavailing.

Several exceptions were taken to statements made by the State's attorney in his argument to the jury. Not one of them was withdrawn, and in each instance the action of the court in permitting the exception, without commenting upon the impropriety and warning the jury to disregard it, amounted to a ruling that it was proper. *Landry* v. *Hubert,* 100 Vt. 268, 277, 137 Atl. 97; *Hall* v. *Fletcher,* 100 Vt. 210, 213, 136 Atl. 388.

Whether an improper argument is of such a nature as to require a reversal depends upon the attending circumstances and there is little profit in comparing one case with another. *Russ* v. *Good,* 92 Vt. 202, 207, 102 Atl. 481. Prejudice to the excepting party must always affirmatively appear. *Wittig* v. *Burnap,* 99 Vt. 340, 342, 132 Atl. 39; *Button* v. *Knight,* 95 Vt. 381, 386, 115 Atl. 499; *Russ* v. *Good, supra; Drown* v. *Oderkirk,* 89 Vt. 484, 489, 96 Atl. 11. And the burden of showing the impropriety is upon the excepting party. *Carleton* v. *E. & T. Fairbanks & Co.,* 88 Vt. 537, 553, 93 Atl. 462.

The State's attorney said: ''I naturally believe that this complaint is warranted and I think that I was justified in issuing it.'' We construe this language to be equivalent to the expression of the personal belief of the State's attorney in the guilt of the respondent and it was highly improper thus to argue to the jury. *Commonwealth* v. *Ronello,* 251 Pa. 329, 98 Atl. 826, 829; *State* v. *Thayer,* 124 Ohio St. 1, 176 N. E. 656, 657-659, 75 A. L. R. 48. The action of the court in permitting the statement to go unrebuked and not withdrawn was error, and, we think, prejudicial.

The same counsel also asserted that the respondent twice negotiated with the witness Blodgett on the streets of Lyndonville for the storage of the liquor on the latter's premises. The evidence introduced by the State tended to show two conversations between them upon this subject, but only one of these was in Lyndonville. The misquotation of the testimony was of too trifling a nature to afford a reasonable ground of objection, and this exception is without merit. *State* v. *Stacy,* 104 Vt. 379, 160 Atl. 257, 268; *Laferriere* v. *Gray,* 104 Vt. 366, 160 Atl.

270, 273; *Carleton* v. *E. & T. Fairbanks & Co.*, 88 Vt. 537, 554, 93 Atl. 462.

It appeared that, before the trial, the witness Blodgett had made a statement to an experienced member of the bar at variance with his testimony, and this gentleman was called by the respondent to impeach the witness. In referring to this matter in argument the State's attorney said: "If Blodgett had continued to lie, do you think Mr. Porter would have been up here testifying to-day?" An exception was taken, but the matter does not present reversible error. The State claimed that what Blodgett had said on the witness stand was the truth, and what he had said to Mr. Porter was not. Of course, if Blodgett had testified in accordance with his previous statement, the impeaching witness would not have been called. There was nothing in the argument that reflected upon Mr. Porter, or that would give anyone to think that he was charged with complicity in the preparation of a false statement, and this seems to be the ground upon which error is claimed by the respondent.

We cannot say that the argument which charged the respondent with being the member of a "gang" of which he was the chief was unsupported by the evidence, for the testimony tended to show that there were others involved and assisting in the concealment of the liquor, and that the respondent made the arrangements for it.

In explanation of the inconsistent statements of Blodgett, the State's attorney said that the witness "was afraid the props would be knocked out from under him by Ray Parker (the respondent) if he told the truth." Here again we cannot say that the argument was unwarranted. The witness had testified that the respondent had told him "to keep his mouth shut and he would see that he got out all right." He also said that, after he had given a signed statement to the sheriff, which was in accordance with his testimony, the respondent had told him that this was a very foolish move, and if he denied the statement, he would be taken care of; and that he thought that if he did not lie, and were fined for his part in the transaction, his fine would not be paid. There may have been ground for counsel for respondent to argue that Blodgett was quite as much in fear of the authorities as he was of the respondent, but this did not make it improper for the State's attorney to urge the jury to

502

accept a construction of the evidence favorable to the prosecution.

Blodgett testified that the liquor was brought to his farm in two automobiles driven by Francis Parker and another man called Greenwood. Francis Parker was not called as a witness, and the State's attorney said in argument, "Why isn't Francis Parker here to deny being up there (at Blodgett's farm)?" An exception was taken to this, the ground being that, for all that appeared, he was equally available to the State as to the respondent. There is nothing in the record which gives any explanation why he was not called as a witness, or indicates that it was known where he was. Where a witness is equally available to both parties, no inference unfavorable to the respondent can be drawn from his failure to produce him. *State* v. *Fitzgerald*, 68 Vt. 125, 127, 34 Atl. 429. It is only when the evidence is peculiarly within the knowledge of the party that such inference can be drawn. *State* v. *Fitzgerald, supra; State* v. *Hathorn*, 100 Vt. 431, 433, 138 Atl. 733; *McKinstry* v. *Collins,* 74 Vt. 147, 161, 52 Atl. 438; *In re McCabe's Will*, 73 Vt. 175, 176, 50 Atl. 804; *State* v. *Smith*, 71 Vt. 331, 332, 45 Atl. 219; *State* v. *Ward*, 61 Vt. 153, 191, 17 Atl. 483; *Seward* v. *Garlin*, 33 Vt. 583, 592, 593. But the burden is upon the excepting party to show reversible error, and every presumption, not positively inconsistent with the record, must be made in favor of the ruling below. *Read & Davis* v. *Reynolds*, 95 Vt. 45, 46, 112 Atl. 359; *Button* v. *Knight*, 95 Vt. 381, 384, 115 Atl. 499; *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 152, 130 Atl. 758. We cannot, therefore, for the purpose of finding error, assume, in the absence of any showing upon the matter, that Francis Parker was equally available to both parties, or that the purport of the testimony which he would give and his then present whereabouts were not peculiarly within the knowledge of the respondent. *State* v. *Smith, supra*, 71 Vt. at page 333, 45 Atl. 219; *Wood* v. *Agostines*, 72 Vt. 51, 54, 47 Atl. 108. No error is made to appear and the exception is not sustained.

The State's attorney also stated in his argument that the north country was infested and that things that happened in New York were happening in little country towns, that the gang, of which the respondent was the chief and whose business had practically been rum running, had come down from the

north without regard for children or the property of others, that no social gathering could be had unless some lawless act were perpetrated, and that the respondent had been put upon trial because the people demanded it. Several exceptions were taken to these remarks but we treat them as one. This language transcended the limits of legitimate advocacy. So far as it purported to state facts, it was unsupported by the evidence; and it was further an appeal to the prejudice and passion of the jury. In both aspects it was highly objectionable and could not have been otherwise than prejudicial. It is really unnecessary to cite authority in support of this holding, but reference may be made to *Northern Trust Co.* v. *Perry,* 104 Vt. 44, 156 Atl. 906, 908; *State* v. *Shaw,* 89 Vt. 121, 129, 94 Atl. 434, L. R. A. 1918F, 1087; *Fadden* v. *McKinney,* 87 Vt. 316, 327, 329, 89 Atl. 351; *Herrick* v. *Town of Holland,* 83 Vt. 502, 513, 77 Atl. 6; *Citizen's Sav. Bank & Trust Co.* v. *Fitchburg Mut. Fire Insurance Co.,* 86 Vt. 267, 276, 84 Atl. 970; and *Douglas* v. *Carr,* 80 Vt. 392, 397, 67 Atl. 1089, which, together with numerous other decisions, fully illustrate the principle involved here.

As far as possible we ought to rid ourselves of technicalities in the administration of justice, for it is always the merit of the controversy that is the important and essential thing. But we cannot regard a matter which injuriously affects the rights of a party as a technicality. Every respondent, no matter how clear the evidence may make his guilt, is entitled to a fair trial and to receive a verdict after an argument based only upon that evidence, without an inflammatory appeal or the reference to matters outside the record. To permit the jury to listen to and to consider such an appeal or a statement of facts entirely unproved, even if immaterial, which can only result in prejudicing their minds against the respondent, is to depart from all those ideals of justice and fair play which lie at the foundation of our system of law.

*Judgment reversed, conviction and sentence set aside, and cause remanded.*